84,194-01

# LOONEY&CONRAD P.C.
*Trial Lawyers*

11767 KATY FREEWAY, SUITE 740
HOUSTON, TEXAS 77079
(281) 597-8818 – OFFICE
(281) 597-8284 – FACSIMILE

PAUL C. LOONEY
CLAY S. CONRAD
RICHARD L. SENASAC
CARBETT "TREY" DUHON III,
OF-COUNSEL
WWW.LOONEYCONRAD.COM

918 AUSTIN STREET
HEMPSTEAD, TEXAS 77445
(979) 826-8484 – OFFICE
(979) 826-8488 – FACSIMILE

RECEIVED IN
COURT OF CRIMINAL APPEALS

DEC 1 0 2015

Abel Acosta, Clerk

Office of the Clerk                                    December 8, 2015
Texas Court of Criminal Appeals
P.O. Box 12308
Austin, Texas 78711

RE:     Ex Parte Davon Paul Barrett, Writ No. WR-84,194-01

Dear Clerk:

        ENCLOSED PLEASE FIND the original of Davon Paul Barrett's Motion for Leave to File Application for a Writ of Habeas Corpus Pursuant to 11.07 .... After Cure of Deficiencies Following Dismissal for Non-Compliance. This case is a multi-level confusion, but as the application will reveal this case was recommended to be dismissed by the convicting court, and dismissal was entered by this Court on November 25, 2015 without written order, and this filing explains the central matter: the dismissal was entered by this Court believing that there was no compliance on Rule 73.1 Tex. R. App. Proc. when such compliance had been accomplished before the convicting court recommendation for dismissal for non-Compliance.

        Thanking you in advance for your consideration, cooperation and attention in this matter, and I remain,

                                                        Sincerely,

                                                        Clay Conrad
                                                        COUNSEL FOR DAVON PAUL BARRETT

Enclosures
Cc:     FILE
        Andrea Jacobs, ADA
        401 W. Belknap
        Fort Worth, Tx. 76196-0201
CSC/JL

WRIT NO. <u>WR-84,194-01</u>

# IN THE COURT OF CRIMINAL APPEALS
## FOR THE STATE OF TEXAS

| | | |
|---|---|---|
| **EX PARTE** | § | **PETITIONER** |
| | § | |
| **DAVON PAUL BARRETT** | § | **RESPONDENT** |

## DAVON PAUL BARRETT'S MOTION FOR LEAVE TO FILE APPLICATION FOR A WRIT OF HABEAS CORPUS PURSUANT TO ART. 11.07 TEX. CODE CRIM. PROC. AFTER CURE OF DEFICIENCIES FOLLOWING DISMSSAL FOR NON-COMPLIANCE

**TO: THE HONORABLE JUSTICES OF THE TEXAS COURT OF CRIMINAL APPEALS**

DAVON PAUL BARRETT, Petitioner, ("Barrett"), by and through his counsel of record, Clay Conrad, "Counsel", moves this Court for leave to file his application for a writ of habeas corpus, pursuant to Art. 11.07 Tex. Code Crim. Proc., and in support of such leave to file Barrett would show as follows:

I.

## PROCEDURAL HISTORY

1. September 29, 2015 Barrett filed his initial application for a writ of habeas corpus, (Ex. 1), in error. The application was filed from his counsel's office directly in this Court instead of the convicting court. September 29, 2015 the application was received by the Clerk of this Court and rejected with instructions to file in the District Court. (Ex. 2).

1

2. October 6, 2015 the application was properly filed in the District Court. (Ex. 3). October 19, 2015 the State responded with a motion to dismiss. (Ex. 4). The motion to dismiss was not predicated on substantive deficiency in the application as being either frivolous or otherwise insufficient to warrant the granting of habeas corpus relief. The State's motion to dismiss was predicated on the application's failure to allege the factual basis for granting habeas relief on the approved habeas corpus "form" itself.

3. At that at the time of filing of the initial application and "form" (initially with this Court, in error) with the District Court counsel for Barrett included a memorandum of law in support of the grounds for habeas corpus relief. In that memorandum was the factual basis supporting each ground for habeas corpus relief. There has NEVER been a claim by the State of Texas that the factual basis for granting habeas corpus relief is insufficient, or that the grounds are frivolous. The State of Texas has neither denied a single habeas corpus fact alleged, nor has the State presented evidence from the lawyers complained of as rendering ineffective assistance that the facts alleged in the initial application are untrue. All that was alleged was that the facts, themselves, were not contained within the approved "form".

2

4.     Barrett verified the factual basis alleged. That affidavit was appended to the memorandum filed concurrently with the filing of the "form" in the District Court.

5.     October 23, 2015 Counsel filed Barrett's reply to the State's motion to dismiss. In that filing Counsel noted to the District Court that the State of Texas was not challenging the sufficiency of the habeas corpus facts, nor the law in support, and the State was not claiming that the claims were frivolous. (Ex. 5). The sole claim was that the application should be dismissed for failure to include the factual basis for granting habeas relief on the "form" itself.

6.     Concurrent with that filing, on October 23, 2015, Barrett filed his "Motion for Leave to File Amended Pleadings", (Ex. 6), and his "First Supplemental (Form) Application for a Writ of Habeas Corpus Seeking Relief From Final Felony Conviction Under Code of Criminal Procedure, Article 11.07" (i.e., the 'form') containing all the facts in support of habeas relief written on the "form" itself. (Ex. 7). The District Clerk "received" these filings on October 29, 2015. (Ex. 8).

7.     November 10, 2015, twelve (12) days after receipt of the supplemental application for habeas corpus, (Ex. 6,7,8), the District Court entered an order recommending dismissal of Barrett's application, based solely on non-compliance, that Barrett had failed to include his factual basis for granting habeas relief on the approved "form". (Ex. 9). Even though leave to file and a supplemental application

for habeas corpus relief was filed on the approved "form" and pending at the time the District Court recommended dismissal, dismissal was recommended nonetheless. (Ex. 9). The District Court's recommendation as to dismissal was silent on Barrett's actually curing any alleged defect in filing before the recommendation.

8. The District Court's recommendation of dismissal also included an order to the District Clerk to transmit the recommendation along with the "Writ transcript to the Clerk of the Court of Criminal Appeals as required by law." (Ex. 9). When Barrett received that order he was concerned that since no time had been allowed for the filing of objections to the Court's recommendation of dismissal that the Clerk of the District Court would transmit the "writ transcript" to the Clerk of this Court before Barrett's objections could be received to be included in that record. Barret is in prison, his counsel is in Houston, Texas, and the District Court is in Fort Worth, Texas. There is no e-filing allowed in the Tarrant County District Court for criminal cases. As a result Barrett had to rely on the mail. Barrett's counsel was unwilling to do that with such an important filing.

9. November 13, 2015 Barrett filed his objections to the District Court's recommendation for dismissal for non-compliance. (Ex. 10). The objections were filed in the District Court, but in an abundance of caution Barrett mailed the objections for filing in this Court as well because he feared the objections would not

4

be received by the District Clerk in time to include in the transcript filed in this Court pursuant to the rules. (Ex. 11).

10. Barrett has now been advised that this Court DISMISSED the entire habeas corpus proceeding based on non-compliance with Rule 73.1 Tex. R. App. Proc. Barrett's family has now advised his Counsel that the Court entered an Order of dismissal on November 25,, 2015. December 7, 2015 Counsel verified with the Clerk of this Court that on November 25, 2015, without a written order, this Court DISMISSED this case for non-compliance with Rule 73.1 Tex. R. App. Proc.

11. By all appearances what Barrett's counsel believed would happen has happened. Counsel believed that the Clerk of the District Court would transmit the record of the District Court without including in that transmission Barrett's objections to the District Court's recommendation of dismissal based on non-compliance, by not putting the facts in support of granting habeas corpus on the approved "form" itself. The fact is the District Court recommended dismissal, and this Court has entered its own order of dismissal, based on non-compliance with Rule 73.1 Tex. R. App. Proc., and Barrett complied with the Rule long before dismissal was ordered.

## II.

## ARGUMENT IN SUPPORT

5

1. Rule 73.1 (a) Tex. R. App. Proc. provides that an application for habeas corpus in a non-capital case must be made in the form prescribed by the Court of Criminal Appeals. Reference to the exhibits appended hereto reveals that the "form" did contain the habeas facts and was filed of record in the District Court, (Ex. 7) which was received by the District Court October 29, 2015, (Ex. 8), long before dismissal was recommended by the District Court on November 10, 2015. (Ex. 9), and long before this Court entered its order of dismissal for non-compliance with Rule 73.1 Tex. R. App. Proc. on November 25, 2015. By all appearances this Court ordered dismissal because the Court was under the impression that the "form" had not been filed of record containing all the habeas corpus facts, when in truth, the "form" was on file prior to the District Court recommending dismissal.

2. What appears to have happened is that the District Court did not include in the transcript of the proceedings in the District Court that Barrett had filed his "form", setting out the entire factual basis for granting habeas relief, (Ex. 7), concurrently with the filing of his response to the State's motion to dismiss, (Ex. 5) and along with a motion for leave to file the approved "form". (Ex. 6). The District Court did not include in the transcript of this case what it had received on October 29, 2015, specifically, Barrett's motion for leave to file (Ex. 6) and approved "form" (Ex. 7).

3.    What also appears is that this Court did not have before it prior to dismissal for non-compliance with Rule 73.1 Tex. R. App. Proc. the documents filed in the District Court proving his compliance with Rule 73.1, to wit:

a.    Rule 73.1(a) requires the form with all factual bases for granting relief to be contained thereon. Barrett filed, not only, the approved form complete with the entire factual basis for granting habeas corpus relief, (Ex.7), but he also filed his motion for leave to file, (Ex. 6), the approved form. These documents were received by the District Court prior to entering the recommendation of dismissal, (Ex. 8);

b.    Rule 73.1(b) requires the clerk of the convicting court to make the forms available on request. This rule presumes filings to be received without use of the "form", so the rule provides that the clerk of the convicting court supply the form. Barrett made application on the approved form. But, even filing on the approved form was not allowed by the "convicting" court. Dismissal for non-use of the approved form was entered even though compliance had been achieved prior to dismissal being recommended by the District Court;

c.    Rule 73.1(c) requires all the information required by the form to be provided. Barrett provided not only all the information requested, but he included his own memorandum of law in support of his application in a separate document. Notwithstanding this compliance, the District Court recommended non-compliance,

7

and this Court dismissed for non-compliance when compliance had been achieved before recommendation for dismissal by the convicting court and dismissal by this Court occurred;

d.    Rule 73.1(d) requires verification of the application; Barrett verified his application, and that verification is appended to the application itself. (Ex. 7). Even counsel provided verification. (Ex. 7).   Compliance with the verification requirement has occurred;

4.    It is Rule 73.2 Tex. R. App. Proc. that was not considered when Barrett's application was recommended to be dismissed by order of the convicting court, and then actually dismissed without written order by this Court for non-compliance with Rule 73.1 on November 25, 2015. Rule 73.2 requires that a non-complying application will be returned to the applicant by the clerk of the convicting court with notations of the non-compliance. Additionally, if a non-complying application is filed in the Court of Criminal Appeals the Clerk of this Court is required to return the non-complying application to the Clerk of the convicting court with notations of the defects.  What is presumed by this Rule is that there will be allowed an opportunity to "cure" any defect. In Barrett's case the non-complying application was received by the Clerk, and instead of returning the non-complying application the State was allowed to move for dismissal, and the dismissal was ordered, notwithstanding a complying application on the approved form being on

file at the time dismissal was recommended by the District Court and later ordered by this Court.

5. By all appearances the clerk of the convicting court did not transmit all of the record of the proceedings below. Instead of returning the non-compliant application on receipt the clerk of the convicting court filed the application, and the State filed its response. It was only then that Barrett and his counsel became aware that objection was being made to the "form" that was submitted, that all the habeas facts were contained in the memorandum as opposed to the "form" itself. When that discovery was made by the filing of the State's motion to dismiss, Barrett filed a complying application on the approved form, as well as, a separate memorandum of arguments and authorities. He did so prior to submission to the convicting court for its recommendation.

6. In the end the application was fully compliant when it was reviewed, and the merits of the application should have been reached, and the convicting court should have based its recommendation on the compliant application on the approved form. This did not occur.

III.

## CONCLUSION

1. This Court is faced with an unusual situation. What has occurred is a habeas corpus applicant, Barrett, is faced with having his claims of ineffective

assistance dismissed without the facts underlying those claims being reached on the merits. The reason for the merits not being reached is that the application was not completed on the "form" already approved for such filings – without the District Clerk applying Rule 73.2, as the law requires. That defect, however, was cured long before a recommendation for dismissal was entered by the convicting court. That defect, however, was cured long before this Court entered an Order of Dismissal for non-compliance with Rule 73.1 Tex. R. App. Proc. on November 25, 2015.

2. One overriding reality remains. The non-compliance with Rule 73.1 Tex. R. App. Proc. was cured on October 23, 2015 when Barrett filed his supplemental approved "form" application for habeas corpus relief, and the recommendation for dismissal from the convicting court did not occur until November 10, 2015, and the dismissal for non-compliance with Rule 73.1 Tex. R. App. Proc. was entered on November 25, 2015, thirty-three (33) days after a supplemental application was filed on the approved "form" in the convicting court.

3. What remains is Barrett is in prison for sixty (60) years, on a case he could have and would have pleaded guilty to and received a ten (10) year sentence if his lawyer(s) had simply communicated the offer to him, once prior to the case being indicted and the other prior to the trial being set. What remains is Barrett remaining in prison with a sixty (60) year sentence on a case that was pled and proceeded to conviction for aggravated robbery by use and exhibiting a deadly

10

weapon, to wit: a firearm, when the video of the crime itself reveals the actor did not exhibit a deadly weapon at all. This occurred only because Barrett's trial counsel failed to present the video to the jury at trial.

4. Issues of ineffective assistance, in Texas, are reserved to the habeas corpus procedure outlined in Art. 11.07 Tex. Code Crim. Proc. and the procedural requisites of Rule 73, et. seq. Tex. R. App. Proc. It seems a harsh resolution of such application when counsel for Barrett cured any and all defects in filing, without having to be directed to do so, prior to the convicting court recommending dismissal, and prior to this Court entering an order of dismissal for non-compliance with Rule 73.1 Tex. R. App. Proc.

WHEREFORE, DAVON PAUL BARRETT, by and through his undersigned Counsel, pray this Court reconsiders its order of dismissal of November 25, 2015, to the end that the application and supplemental application for habeas relief is reinstated, to the end that the entire matter is returned to the convicting court with instructions to permit the State of Texas to respond to the application and supplemental application, to the end that the convicting court enters its recommendation to this Court and the entire case is transmitted to this Court for final adjudication on the merits. DAVON PAUL BARRETT, and his Counsel, Clay Conrad, pray for any and all other relief to which they may have shown DAVON PAUL BARRETT to be entitled.

11

Respectfully submitted,

Clay Conrad
Reg. No. 00795301
**LOONEY & CONRAD**
**11767 Katy Frwy, Suite 740**
**Houston, Texas 77079**
**(281) 597-8818 (Office)**
**(281)597-8284 (Telefax)**
csconrad@looneyconrad.com
**COUNSEL FOR PETITIONER**

## CERTIFICATE OF SERVICE

I, Clay Conrad, certify that on December 8, 2015 a true and correct copy of this document was duly served upon Andrea Jacobs, Assistant District Attorney for Tarrant County, Texas at her listed address 401 West Belknap, Fort Worth, Texas 76196-0201, by regular mail.

Clay Conrad
COUNSEL FOR PETITIONER

Case No. _____

(The Clerk of the convicting court will fill this line in.)

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### APPLICATION FOR A WRIT OF HABEAS CORPUS
### SEEKING RELIEF FROM FINAL FELONY CONVICTION
### UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: _Davon Paul Barrett_

DATE OF BIRTH: _May 7, 1988_

PLACE OF CONFINEMENT: _H.H. Coffield Unit, Tennessee Colony, TX_

TDCJ-CID NUMBER: _01854612_ SID NUMBER: _____

(1) This application concerns (check all that apply):

☒ a conviction ☐ parole

☐ a sentence ☐ mandatory supervision

☐ time credit ☐ out-of-time appeal or petition for discretionary review

RECEIVED IN
COURT OF CRIMINAL APPEALS
SEP 29 2015
Abel Acosta, Clerk

(2) What district court entered the judgment of the conviction you want relief from? (Include the court number and county.)

_396th District Ct., Tarrant County, TX_

(3) What was the case number in the trial court?

_1266858 D_

(4) What was the name of the trial judge?

_Hon. George Gallagher_

**(5)** Were you represented by counsel? If yes, provide the attorney's name:

Yes, Lisa Mullen, Glynis A. McGinty, Al Lazarus

**(6)** What was the date that the judgment was entered?

May 1, 2013

**(7)** For what offense were you convicted and what was the sentence?

Aggravated Robbery w/ Deadly Weapon

**(8)** If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

N/A

**(9)** What was the plea you entered? (Check one.)

- ☐ guilty-open plea
- ☒ not guilty
- ☐ guilty-plea bargain
- ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

**(10)** What kind of trial did you have?

- ☐ no jury
- ☐ jury for guilt and punishment
- ☒ jury for guilt, judge for punishment

2

(11)    Did you testify at trial?  If yes, at what phase of the trial did you testify?

_____NO._____

(12)    Did you appeal from the judgment of conviction?

☑ yes                            ☐ no

If you did appeal, answer the following questions:

(A)  What court of appeals did you appeal to?   _Second  District_____

(B)  What was the case number?    _02-13-00200-CR_____

(C)  Were you represented by counsel on appeal? If yes, provide the attorney's
     name:
     ____Lisa    Mullen_____

(D)  What was the decision and the date of the decision?   _Aff'd, June 5, 2014_

(13)    Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes                            ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A)  What was the case number?    _PD-0869-14_____

(B)  What was the decision and the date of the decision?   _Refused, Oct. 1, 2014_

(14)    Have you previously filed an application for a writ of habeas corpus under Article
        11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                            ☑ no

If you answered yes, answer the following questions:

(A)  What was the Court of Criminal Appeals' writ number?  _____

3

(B) What was the decision and the date of the decision? _____

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes          ☒ no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes          ☒ no

If you answered yes, answer the following questions:

(A) What date did you present the claim? ___N/A_____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

ThAT Is NOT the IssuE Here -

4



(17)  Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

Ineffective Assistance in Plea

Bargain Process

**FACTS SUPPORTING GROUND ONE:**

See Attached Memorandum

6

**GROUND TWO:**

Ineffective Assistance At Trial -

Failure to Point out Flaws in Evidence

**FACTS SUPPORTING GROUND TWO:**

See Attached Memorandum

8

**GROUND THREE:**

Ineffective assistance: Failure to note & argue contradictions between c/w's testimony and States video tape evidence showing no firearm used.

**FACTS SUPPORTING GROUND THREE:**

See attached

memorandum

**GROUND FOUR:**

Ineffective assistance for counsel's failure to note
and argue the police investigation did not support
aggravated robbery, nor interview or subpoena
witness supporting the defense

**FACTS SUPPORTING GROUND FOUR:**

See attached memorandum

12

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _HARRIS_

_CLAY S. Conran_ , being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _17_ DAY OF _August_, 20_15_.

CRYSTAL LYNN ELDRIDGE
MY COMMISSION EXPIRES
September 19, 2018

_____
Signature of Notary Public

16

## PETITIONER'S INFORMATION

Petitioner's printed name: _CLAY S. CONRAD_

State bar number, if applicable: _00795301_

Address: _Looney & Conrad, P.C._

_11767 KATY FWY, #740_

_Houston TX 77079_

Telephone: _281-597-8818_

Fax: _281-597-8284_

## INMATE'S DECLARATION

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____
Signature of Applicant / Petitioner (circle one)

17

| | |
|---|---|
| *Ex Parte* | § |
| | § |
| **DAVON PAUL** | § |
| **BARRETT** | § |
| **Applicant** | §  **WRIT NO. _____** |

**MEMORANDUM OF LAW ON
APPLICATION FOR POSTCONVICTION
WRIT OF HABEAS CORPUS
PURSUANT TO ARTICLE 11.072
OF THE TEXAS CODE OF CRIMINAL PROCEDURE**

To the Honorable Judges of the Texas Court of Criminal Appeals:

COMES NOW Davon Paul Barrett, Applicant, by and through his Attorney of Record, Clay S. Conrad, Petitioner, to petition this Honorable Court to grant a Writ of Habeas Corpus pursuant to Art. 11.07 *et seq.* of the Texas Code of Criminal Procedure, seeking that the conviction and judgment against him be vacated, and in support shows the following:

**I.**

**STATEMENT OF FACTS**

Applicant is presently being illegally and unconstitutionally confined and restrained of his liberty under color of a judgment and sentence against him from the 396th District Court, Tarrant County, Texas, Judge George Gallagher, Presiding. Applicant is currently serving a sixty (60) year sentence at the H.H. Coffield Unit in Tennessee Colony, Texas.

Applicant was convicted following a jury trial of Aggravated Robbery with a Deadly Weapon on May 1, 2014 in Cause No. 1266858D, Tarrant County, Texas.

1

The Applicant was sentenced by Judge Gallagher to sixty (60) years in the custody of the Texas Department of Criminal Justice on May 1, 2015.

Applicant filed a direct appeal in the 2nd Court of Appeals, Cause No. 02-13-00200-CR, which was decided against him in an unpublished opinion on June 5, 2014. He then filed a Petition for Discretionary Review before the Texas Court of Criminal Appeals, which was refused October 1, 2014 in Cause No. PD-0869-14. The mandate on this direct appeal issued November 10, 2014. This petition follows.

## II.

## JURISDICTIONAL STATEMENT

Jurisdiction is invoked pursuant to the provisions of Article 11.01, *et seq.*, of the Texas Code of Criminal Procedure. Applicant is unlawfully and unconstitutionally confined and restrained of his liberty in violation of Article I, Section 10 of the Texas Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. A copy of the relevant exhibits are hereto attached and incorporated by reference the same as if copied in full and set forth at length herein.

## III.

## GROUNDS FOR RELIEF

This restraint is unlawful because:

(1) Counsel Al Lazarus rendered ineffective assistance in that he failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea agreement prior to the expiration of the agreement, thus depriving Applicant of

the ability to make an informed decision concerning the 10 year plea agreement offered by the State.

(2) Counsel Glynis A. McGinty rendered ineffective assistance in that she failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea agreement prior to the expiration of the agreement, thus depriving Applicant of the ability to make an informed decision concerning the 10 year plea agreement that had been offered by the State.

(3) Counsel Glynis A. McGinty rendered ineffective assistance in that she failed to note and argue before the jury the contradictions between the videotape of the alleged crime and the complaining witness' initial report of the crime and her trial testimony, when the videotape revealed no firearm in the possession of Applicant nor Applicant coming within close proximity of the complainant to have held a firearm to her head, as she initially reported, nor to have held a firearm to her side as she testified at trial.

(4) Counsel rendered ineffective assistance by failing to note and argue that the aggravated robbery the State ultimately charged was unsupported by the police investigation, and Counsel failed to interview and subpoena witnesses to support such defense at trial.

## IV.

## ARGUMENT AND AUTHORITIES

**Ground One:**

> Counsel Lazarus rendered ineffective assistance in that he failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea bargain agreement prior to the expiration of the agreement, thus depriving Applicant of the ability to

3

make an informed decision concerning the 10 year plea agreement that had been offered by the State,

**Ground Two:**

> Counsel McGinty rendered ineffective assistance in that she failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea bargain agreement prior to the expiration of the agreement, thus depriving Applicant of the ability to make an informed decision concerning the 10 year plea agreement that had been offered by the State.

**A.    Ground One: Ineffective Assistance of Counsel Rendered During Plea Negotiations by Counsel Lazarus.**

Prior to the trial of this case, offers of ten years' incarceration were made Counsel, not once, but twice. The first offer was made to counsel, ten years' incarceration, and the initial offer was held open until such time as Applicant was indicted. Counsel was appointed to represent Applicant on January 23, 2012. C.R. 12. The initial plea offer by the State of ten years' incarceration was made at the consultation hearing on February 3, 2012. See "Consultation Setting Plea Offer Acknowledgement, attached hereto and incorporated herein for all purposes, as well as, Affidavit of Davon Paul Barrett, likewise attached hereto and incorporated herein for all purposes. The indictment was returned two weeks later on February 17, 2012. (Attached).

4

In that two week period Counsel failed in his duty to conduct an independent investigation into the law and facts of the case. That two week period was critical in that the ten year offer was only good, per Counsel's agreement with the State, up to indictment. Applicant was in custody during this two week period, and Counsel failed to communicate with Applicant. During that two week period, it appears Counsel did nothing. It is beyond cavil that he did not visit Applicant in jail to speak with Applicant about the plea offer. Nor did he request additional time from the Tarrant County District Attorney's Office prior to seeking an indictment so that he could complete discovery and confer with Applicant. He simply let the offer lapse without action, and by doing so deprived Applicant of any opportunity to accept the outstanding ten year plea offer.

**B.    Ground Two: Ineffective Assistance during Plea Negotiations by Counsel McGinty**

The State again made a ten year offer, prior to the case going to trial, on July 30, 2012. (Attached). This offer was made at the Status Conference. The State held that offer open for only one day. At that time, Counsel McGinty was Applicant's

trial counsel. *Id.*[1] In light of the State's overwhelming case and the prior bad acts the State had noticed and intended to introduce at trial, Counsel had a duty to act with some urgency and advise Applicant concerning the merits of the ten year plea offer. In spite of this, Counsel did not discuss the advisability of accepting this offer with Applicant. In fact, Counsel failed to apprise Applicant that the ten year offer was available. It was not until it was too late for the offer to be accepted that Applicant learned of it.

## C.    Harm Analysis

Prejudice is empirical.    Applicant has sworn that if either Counsel had discussed with him the advisability of either of these plea offers, along with the risks of going to trial, he would have taken the offer. See Affidavit of Davon Paul Barrett, (Attached). Because both offers expired without his attorneys discussing them with him, he was deprived of the opportunity to accept them. See Affidavit of Davon Paul Barrett. (Attached). As Applicant received a sixty (60) year sentence following trial, the harm of being denied the opportunity to seriously consider and accept these plea offers is beyond serious debate. It is beyond cavil that an additional fifty (50) years

---

[1] While the record clearly shows that Ms. McGinty took over representation of the Applicant, the record does not show a Motion for Substitution.  It is unclear from the record exactly when she took over the case.

of incarceration cannot sensibly be deemed "not prejudicial". The Supreme Court has declared that where sentencing is concerned even a single extra day in prison attributable to defense counsel's ineffectiveness is prejudicial. *United States vs. Glover*, 531 US 198 (2001). A ten year sentence, which Applicant should have been strongly advised to accept, and which Applicant would have accepted, was cavalierly left to expire on two occasions. Prejudice to Applicant is empirical under these facts. *See Ex parte Wilson*, 724 S.W.2d 72, 74 (Tex. Crim. App. 1987).

But both Counsels' ineffectiveness did not end with their collective unreasonable procrastination. Both Counsel failed to note that Applicant was, for all intents and purposes, predisposed to accept the plea agreement offered by the State. In the prior bad acts noticed by the State there is a collection of incidents in which bad acts were alleged, leading to a collection of arrests, followed by a collection of prosecutions by the same prosecution team heading the instant prosecution of Applicant. In each and every, all and singular, the prior bad acts that led to the arrest of Applicant that resulted in prosecutions being pursued Applicant pleaded GUILTY each and every time! Not once, in the prior bad acts alleged by the State, did this Applicant fail to waive his right to trial and plead guilty. Given the voluminous record of prior bad acts noticed by the State it would have been professionally reasonable for either Counsel to simply realize this case could be resolved with a

7

plea of guilty unless something defensible could be revealed in either Counsels' independent investigation of the facts of the case. As nothing was revealed by either Counsel, both Counsel rendered ineffective assistance in failing to note that Applicant was predisposed to waive trial and enter a plea of guilty immediately after either of the two ten year prison sentence offers were made by the State. Given this reality, Counsels' procrastination in resolving this case via plea of guilty and ten year sentence accepted is evermore unreasonable.

## D. A Lawyer's Duty Concerning Plea Bargains

The Sixth Amendment, applicable to the States through the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel so guaranteed is the right to effective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Sixth Amendment requires that the accused receive effective assistance of counsel at all critical stages of litigation. *United States v. Cronic*, 466 U.S. 648, 659 (1984).

The negotiation and consideration of plea offers have been deemed critical stages of trial. "The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*

*v. Kentucky*, 559 U.S. 356, 373 (2010). A defense attorney has an obligation to fully advise his client of the terms and desirability of plea offers extended by the State. It is well established that a criminal defendant is entitled to effective assistance of counsel during the plea bargaining process. *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex.Crim.App. 1987). All plea bargain offers must be communicated promptly to the accused. *Id.* at 74. In *Wilson*, the Court of Criminal Appeals determined that counsel's failure to inform his client of a plea offer by the State fell below the objective standard of reasonableness which caused prejudice against the defendant and was, therefore, ineffective assistance of counsel.

To provide effective assistance concerning plea matters, "counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009). Counsel has an absolute duty "to conduct a prompt investigation of the circumstances of the case and to explore all avenues likely to lead to facts relevant to the merits of the case." *Ex parte Briggs*, 187 S.W.3d 458, 467 (Tex. Crim. App. 2005). "Applicant was entitled to rely upon her counsel "to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered" based upon an informed investigation of the

9

facts..." *Id.* at 469, citing to *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S. Ct. 316, 92 L. Ed. 309 (1948) and *McMann v. Richardson*, 397 U.S. 759, 769-70, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)(defense counsel must make his judgment as to the weight of the state's case and share his predictions with the defendant even though the predictions are necessarily uncertain).

Counsel Lazarus had a two week period of time to investigate the case and discuss the plea offer with Applicant. He failed. Applicant was prejudiced.

Counsel McGinty had a shorter period of time – one day. But even the "one day" is deceiving with respect to the issues presented herein. As Counsel admitted in her final day of trial voir dire examination of Applicant relative to his waiving his right to testify, Counsel had represented Applicant for "... almost a year ...". However, it does not appear she ever discussed with Applicant the fact that the offer had been made, much less took the time to inform him of the evidence she was then aware of that would "lead to facts relevant to the merits of the case." *Reedy, supra.* The reset form containing notes of the offer was never signed by Applicant so there is no empirical evidence he was aware the offer was open. Applicant never had a meaningful and informed opportunity to consider either plea offer. Additionally, Counsel McGinty signed a reset form for TRIAL. It must be presumed that when she did this she had conducted here independent investigation, that she was aware

10

of the overwhelming evidence of guilt, of the prior bad acts of Applicant that were admissible at trial, and even of the reality that Applicant had pleaded guilty each and every opportunity he had to do so. Given these facts it seems that a professional attorney rendering reasonably effective assistance would have discussed the ten year plea offer sometime inside the 24 hour window allowed by the State to accept the plea offer.

The United States Supreme Court has noted:

> "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours "is for the most part a system of pleas, not a system of trials," it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system."... In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."

*Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012)(citations omitted). *Frye* unambiguously held "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused... When defense counsel allowed the offer to expire without advising

11

the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.* at 1408.

That case could not be more directly on point. Galin Frye was charged with his fourth offense of driving with a revoked license, a felony carrying a maximum sentence of four years. The State made two time-limited offers: 1) a 3-year sentence to the felony charge, no recommendation regarding probation but a recommendation that Frye serve 10 days in jail, or 2) to reduce the charge to a misdemeanor and recommend a 90-day sentence. Frye's attorney did not inform Frye of the offers, and they expired without Frye having had an opportunity to consider them. That is remarkably similar to the case herein, in which the State twice made ten-year offers, neither of which were investigated nor discussed with Applicant prior to their expiration.

The *Frye* Court continued, saying that:

> "In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. ... It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The

12

determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework."

*Id.* at 1410. The instant case involved a veteran prosecutor who well knew what agreements would have been accepted by the judge she was practicing before. Moreover, it is unrefuted that she was operating in good faith, and would not have revoked a plea offer absent the sort of material intervening circumstances that were not present herein. The best evidence of the fact that the offer would not be revoked is that the State left the offer open for a day prior to trial The obvious conclusion from these objective facts is that the State did not, and would not have, withdrawn the offer, and the trial court would have accepted it.

Without an informed opportunity to consider these plea offers, with the benefit of reasonable efforts by counsel to investigate the merits of the offers and advise their client, the Applicant was denied effective assistance of counsel. As a consequence, he is serving a sentence six (6) times what he would be serving, had he been advised properly by attorneys who had made the effort to conduct the basic discovery that the law requires.

**Ground Three:**

13

Counsel McGinty rendered ineffective assistance in that she failed to note and argue for the jury the contradictions between the videotape of the alleged crime and the complaining witness' initial report of the incident as against her testimony at trial, when the videotape revealed no firearm in the possession of Applicant nor Applicant ever coming in close proximity to the complaining witness to have held a "gun" to her head, as initially reported, nor to have shoved a "gun" in her side as she testified at trial.

## A. Introduction

During the trial of this case, a videotape showing the interaction between the Applicant and the complaining witness was introduced as State's Exhibit 6. That videotape showed that the Applicant, at no point, had a firearm in his possession. Furthermore, even though the complaining witness initially reported that the suspect had held a gun to her head, (See Attached 911 report), and even though she testified that the suspect held a gun to her side. The State's own evidence, the 7-11 surveillance video, reveals that Applicant never came within close proximity to the complaining witness to commit either act, either hold a firearm to her head, or to hold a firearm to her side, in the course of committing theft from a person.

## B. Argument.

14

Counsel McGinty failed in two regards. First, she failed to note and argue the 7-11 surveillance video evidence, State's Ex. 6, as evidence supporting a lesser included offense, of theft from a person, or for simple robbery. The indictment charged the commission of the crime with the use of a deadly weapon, and the 7-11 surveillance evidence was actually exculpatory evidence that Applicant never possessed a firearm, nor used a firearm, in the commission of any crime. At a bare and forgiving minimum, if Counsel was willing to proceed to trial without discussing the ten year plea offer with Applicant in the 24 hours prior to trial, she must be held accountable for noting and arguing that the aggravating element of this crime was not proven by the State's own evidence.

Second, Counsel McGinty never used this 7-11 videotape to impeach the complaining witness. Both the initial report to police, that the actor held a gun to her head, and the trial testimony, that the actor held the gun to her side, are disputed by the State's surveillance video evidence. In fact, the disparities between the video and the testimony was mentioned in closing, but Counsel failed to effectively confront the complaining witness on cross-examination regarding the inconsistencies in her testimony and the 7-11 surveillance video evidence.

15

Third, it is clear from Counsel's closing that she failed to note and argue the relevance of the 7-11 surveillance video evidence. Though Counsel made an oral motion for directed verdict of acquittal prior to beginning her closing, (R.Vol.Tr.Vol.V,p.5), it appears Counsel was unaware of the relevance of the surveillance video evidence, altogether. Counsel did ask the jury to consider the video tape, but she demonstrated not an inkling of understanding of the relevance of the evidence. Counsel stated: "...Look at the video. Compare it with her testimony. That's impossible. Didn't happen like that. Couldn't have. You're looking at it. There wasn't enough time. (R.Vol.Tr., Vol.V., pp.14-15). The relevance of this video tape evidence is NOT to establish a time line for the commission of the crime, rather, it establishes Applicant never possessed a firearm, never held a firearm to the Complainant's head or person, and in the end, it is THE EVIDENCE supporting Counsel's claim on her oral motion for directed verdict of acquittal, supra., that the State had failed to prove beyond a reasonable doubt ... and as counsel put it: "... they failed to commit an aggravated robbery in this matter ...". ID., (R.Vol.Tr.Vol.V., p. 5).

There is far more than a reasonable probability that, had trial counsel noted the real relevance of the surveillance video exculpatory evidence, and if Counsel had argued the real relevance of this evidence to the jury, or even confronted the

16

Complainant with the contradictions between her initial report and her testimony at trial with that evidence, the outcome of the jury's verdict would have differed, and Applicant would not have been convicted of aggravated robbery. The jury would have been confronted with the reality that the evidence, taken as a whole, was that Applicant, if he committed any crime at all, did NOT commit an aggravated robbery because the evidence showed he never possessed a firearm, at all.

The 7-11 surveillance video evidence, likewise, was not challenged as being the best evidence of what occurred that day. In fact, the State introduced other surveillance video evidence from the E-Z Mart, where Applicant was arrested, because it was that evidence that connected Applicant to the Complainant's purse, found in a garbage can, after the dark hooded sweater wearing suspect was seen on video putting something in a trash can, where the Complainant's purse was found by officers. That was competent evidence, not because Applicant says so, but because it was offered into evidence by the State and admitted without objection. Likewise, the 7-11 surveillance video evidence held the same relevance.

Counsel has a constitutional obligation to prepare, and it is presumed by the Supreme Court that counsel does prepare for trial, but that presumption is a

17

rebuttable one. ID. *Strickland,* supra. at 466 US at 687-91; SEE ALSO: *KIMMELMAN v MORRISON,* 477 US 365, 375 (1986). Merely being aware of the existence of the 7-11 surveillance video evidence did not constitute preparation. Preparation included understanding the relevance of the evidence, which Counsel failed to do. It would be one thing if the video evidence was meaningless, but it was not. It was relevant to the State's case, and in the end, it was relevant to the very argument Counsel offered on her oral motion for directed verdict that the State had failed to prove every element of an aggravated robbery beyond a reasonable doubt. There can hardly be a more definitive example of a lawyer's failings resulting in ineffective assistance, to the prejudice of the defendant. Counsel not only failed to resolve this case with a plea bargained sentence fifty years less than the sentence ultimately imposed, but when Counsel proceeded to trial she did so without an inkling of the relevance of exculpatory evidence made available to her, not through her own investigation, but from the office of the prosecutors. The State met its obligation to produce exculpatory evidence. The failing was upon Counsel, and Counsel alone, when she failed in her obligation to note and argue the relevance of that very evidence. That Counsel rendered ineffective assistance under these facts and circumstances is clear, unequivocal.

18

**Ground Four.**

> Counsel rendered ineffective assistance by failing to note and argue that the aggravated robbery the State ultimately charged was unsupported by a the police investigation, and Counsel failed to interview and subpoena witnesses in support of such defense.

A. Introduction.

Again, Counsel McGinty failed in two respects. The first indicates Counsel's failure to properly investigate and apply the results of that investigation to the task of providing an effective defense. The second indicates Counsel's failure to properly prepare for trial by compelling the attendance of relevant witnesses, albeit those witnesses were police detectives and clearly adverse to Applicant's defense.

In the first instance each and every initial report of this incident treated this investigation as a "robbery", not an "aggravated robbery", and the reason for such is clear. The crime, whatever it was, was not an "aggravated" robbery with the suspect committing "robbery" through use of a deadly weapon, to wit: a "firearm". It is not like this crime was committed in a vacuum. It was committed on camera in the full view of investigating detectives. Robbery detectives A. Frizzell (Badge #P178) and Hinson were assigned. Both detectives viewed the 7-11 surveillance video, and both

19

detectives were aware that there was no "firearm" used in the commission of the crime. In all reports authored by Detective Frizzell there was never a mention, not even once, of the use of a firearm in the commission of the crime. During all of this reporting it was "robbery" that was reported, not "aggravated robbery", and the reason is clear why. There was no firearm. Frizzell and Hinson viewed the video in which it is shown that the actor approached the Complainant, and the Complainant ran away immediately. Complainant was not subjected to a gun being placed at her head, as she had reported, and she was not subjected to a gun being held to her side, as she testified. Two witnesses were aware of these facts, and their names were known through their reports, and Counsel failed to subpoena them for trial.

And in the second instance Detective Frizzell is the person responsible for filing what he referred to as "additional charges" against Applicant, and it was these "additional charges" that resulted in the "aggravated" robbery being added. Detective Frizzell interviewed Applicant after his arrest while he was in the custody of the Tarrant County Jail. It was after that interview, wherein Applicant refused to confess to the robbery, that Detective Frizzell decided to "add" the charge of aggravated robbery. Detective Frizzell reported: "I met with Barrett in the jail … to discuss the case. (Barrett gave his version of what occurred which did not have him confessing any involvement in the robbery…) …It became obvious to me that the

20

defendant was going to stick with that story so I stopped the interview. **I added a charge of Aggravated Robbery to Devon Barrett because of the fact that the driver of the vehicle who was wearing the same clothes as Barrett is the subject seen on video committing the offense.**" (Attached Report of Det. Frizzell).

But there was more exculpatory evidence from police officers not the subject of defense subpoena for the trial. Applicant was never identified by Complainant. She had reported that the person who robbed her was right next to her, holding a gun to her head or her side, whichever, but Complainant could not pick Applicant out of a lineup. Detective Scesney showed the Complainant a photo lineup with Applicant's photo included in the array, but Complainant was unable to identify Applicant as the robber. Counsel did not subpoena Detective Scesney for trial, either.

B. Argument.

It is axiomatic that counsel is presumed to have prepared for trial, and likewise, that this presumption is rebuttable. One instance of actionable ineffective assistance was reviewed by the Supreme Court two years after the leading case on the issue was decided, *Strickland v Washington*, in 1984. In 1986 the Court reviewed *Kimmelman v Morrison*, supra. Mr. Kimmelman had been convicted, in a trial, of rape, and at trial he testified that the rape victim had never been in his apartment, much less raped in his apartment. What his counsel had failed to do, however, was

21

to file a discovery motion for objects seized by the police at the time of the arrest. Police had seized a bed sheet from Kimmelman's bed, and it was the victim's blood stains on that bed sheet that caused the jury to convict. The Court determined that it was ineffective assistance for Kimmelman's counsel not to discover the blood stained bed sheet, as that sheet had been illegally seized with a warrantless search of Kimmelman's apartment. Applicant's Counsel's failings were analogous.

Counsel failed to review the detective's reports, failed to learn that it was "robbery", not "aggravated robbery" that was charged initially, and that charge was predicated upon the detectives' review of the 7-11 surveillance video revealing no "firearm" possessed by Applicant. Counsel failed to subpoena the officer who conducted the photo array in which Complainant was unable to identify Applicant, a failing that is consistent with her running from her attacker long before he was in close enough proximity to put a gun either her head, as she reported initially, or to her side, as she reported later and testified to at trial.

Counsel is just not free to fail to successfully marshal all exculpatory evidence in support of her theory of defense at trial. It is clear, from Counsel's closing and the motion for directed verdict filed orally prior to her closing, that the trial defense was that Complainant could not be believed, that there was no firearm to support a conviction for "aggravated" robbery. Certainly, the testimony of Detectives Frizzell

22

and Hinson would have supported that defense theory, and the testimony of Detective Scesney would have supported the theory that Complainant was never in close proximity of the actor at the time of the incident. It simply cannot be concluded that Counsel's failings were not ultimately prejudicial to Applicant's defense, nor that the outcome would not have differed had Counsel not failed in this manner. Reasonably professional attorneys rendering reasonably effective assistance are not permitted under the law to fail so completely in preparation of a case scheduled for jury trial, especially when that jury trial is only occurring because the same Counsel failed to discuss the terms of a plea bargain agreement that the defendant would most certainly have accepted.

## CONCLUSION AND PRAYER

It is clear that Applicant did not receive the effective assistance of counsel. Two plea offers were allowed to expire prior to the Applicant having a chance to consider and accept them. Evidence that would have shown Applicant was guilty only of a less serious offense was not investigated or used by his trial counsel. The Applicant, after these events, received the maximum sentence Texas law allows for his offense. At critical points in this trial, Counsel failed Applicant, and were

23

ineffective, as a matter of law, under the Sixth and Fourteenth Amendments to the United States Constitution.

At trial, critical exculpatory evidence supporting the defense theory was neither made available for presentation, but more importantly, was not presented to the very jury Counsel was seeking to accept the reality that no aggravated robbery was committed. This type of unpreparedness is sufficient to overcome the legal presumption that counsel prepared for trial as required by law.

WHEREFORE, Applicant prays that this Texas Court of Criminal Appeals issues a writ of habeas corpus, to the end that the State of Texas is ORDERED to respond to the instant application for habeas relief, to the end that habeas corpus relief is GRANTED in all things, that the judgment is vacated, and that Applicant is REMANDED to the District Court for further proceedings wherein Applicant is permitted to accept the ten year plea agreement and be sentenced accordingly. Applicant prays for any and all such other relief to which he may show himself entitled, including general relief.

Respectfully submitted,

By:     Clay S. Conrad     w/permission

24

State Bar of Texas # 00795301
11767 Katy Freeway, Ste. 740
Houston, TX 77079
Tel: (281) 597-8818
Fax: (281) 597-8284

COUNSEL FOR APPLICANT

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above *Application for Postconviction Writ of Habeas Corpus Pursuant to Article 11.072 of the Texas Code of Criminal Procedure* was hereby mailed to the office of the Travis County Attorney, 300 County Administration Building, 314 W. 11th Street, P.O. Box 1748, Austin, TX 78767-1748.

Dated September 23, 2015.

Clay S. Conrad

26

COUNTY OF HARRIS          *

STATE OF TEXAS           *

## AFFIDAVIT OF DAVON PAUL BARRETT

BEFORE ME, the Undersigned Notary Public, appeared a person identified to me as Davon Paul Barrett, who reported as follows:

"My name is Davon Paul Barrett. I am currently incarcerated at the H.H. Coffield Unit, 2661 FM 2054, Tennessee Colony, TX 75884. I am over 21 years of age and competent to write this affidavit. The facts herein related are true and correct and of my own personal knowledge.

"I was arrested on or about January 13, 2012. On the second setting, a ten year plea bargain offer was made on my case. My lawyer told me about it in court, but never discussed with me of the desirability of the plea offer. In fact, she never discussed it with me at all, just let me know it was there. I was indicted on February 17, 2012, and due to the indictment I was told the offer was no longer available. If my attorney had taken time to discuss this plea offer or the risks of going to trial with me during the two weeks during which this offer was available, I would have accepted that offer. By letting this offer expire before discussing it with me, I believe my lawyer cost me the opportunity to accept it.

"Another ten year offer was made on or about July 30, 2012, but it was not discussed with me at that time. If my attorney had taken time to discuss this plea offer or the risks of going to trial with me on that date, I would have accepted that offer. By letting this offer expire before discussing it with me, I believe my lawyer cost me the opportunity to accept it.

"I went to trial without my lawyer ever sitting down and discussing any plea offers with me except in the most general terms. She was not available to answer my questions. She never spoke to me outside of court, and spent very little time with me discussing the case in court. I do not believe that my trial lawyers represented me properly.

"Because I never had a discussion with my lawyer about the terms or desirability of any pleas offers the State made, I ended up going to and was sentenced to sixty years in prison. I understand that I was found guilty, but I believe that when plea offers were made, I should have been given the information to intelligently consider them.

"Further I sayeth not."

_____
Davon Paul Barrett

SWORN AND SUBSCRIBED TO BEFORE ME on July 13, 2015.

**Gaye L. Karriker**
Notary Public, State of Texas
My Commission Expires
07/20/2015

**Notary Without Bond**

_____
Notary Public in and for the State of Texas

## LIST OF APPLICANT'S EXHIBITS

Consultation Setting Plea Offer Acknowledgement evidencing a plea offer of ten years confinement in TDCJ as of February 3, 2012.

Indictment indicating the 10 year plea offer was open for two weeks.

Status Conference report from when Counsel McGinty represented the Applicant indicating that as of July 30, 2012 there was, again, a ten yr. Offer from the State, open for one day, signed by Counsel and not by Applicant, indicating Applicant never agreed to refuse the offer. (It is noted that the Status Conference was conducted in the courtroom, and Applicant was available to participate as he was still in custody.)

911 Call Report from January 10, 2012 at 1:31 PM, report # G0366/GP 1200000922+, from the 7-11 store at 2105 N. Hwy 360 SB in Grand Prairie, Texas, in which Complainant first reported that the suspect did Place a gun to her head …

Incident Reports filed by Detectives Frizzell and Hinson wherein it is reported that they both viewed the surveillance video from the 7-11 and no firearm was possessed by the actor, and rather, the suspect approached the Complainant without a firearm and the Complainant ran immediately and before the suspect(s) came into close proximity with Complainant…

Additionally these reports indicate it was a "robbery" and not an "aggravated robbery" being investigated as there was no firearm seen on the 7-11 surveillance video... and also reported is Det. Frizzell's "adding charges" to Applicant, not because of the existence of a firearm in the commission of the offense, but because Applicant "stuck to his story" and did not confess committing the robbery being investigated by Det. Frizzell; and finally, also reported is the report of the photo array that resulted in no identification of Applicant, consistent with the video evidence that the suspect never was within close proximity of Complainant so she was unlikely to be unable to

identify the perpetrator because he was never close enough to see ... as is also corroborated by the 7-11 surveillance video evidence ...



| | | | |
|---|---|---|---|
| THE STATE OF TEXAS | § | IN THE 396TH DISTRICT COURT | |
| | § | | |
| V. | § | | |
| | § | | |
| DAVON PAUL BARRETT | § | TARRANT COUNTY, TEXAS | |
| | § | | |
| | § | | |
| STATE ID NO.: TX07313570 | § | | |

# JUDGMENT OF CONVICTION BY JURY

| | | | |
|---|---|---|---|
| Judge Presiding: | HON. GEORGE GALLAGHER | Date Judgment Entered: | 5/1/2013 |
| Attorney for State: | JOE SHANNON, JR. HEATHER DAVENPORT WILLIAM VASSAR | Attorney for Defendant: | BETHANY GROHAM GLYNIS A MCGINTY |

Offense for which Defendant Convicted:
**AGGRAVATED ROBBERY WITH A DEADLY WEAPON, TO-WIT: A FIREARM**

| | |
|---|---|
| Charging Instrument: **Indictment** | Statute for Offense: **29.03 PC** |
| Date of Offense: **1/10/2012** | |
| Degree of Offense: **1ST DEGREE FELONY** | Plea to Offense: **NOT GUILTY** |
| Verdict of Jury: **Guilty** | Findings on Deadly Weapon: **Yes, a firearm** |
| Plea to 1st Enhancement Paragraph: **N/A** | Plea to 2nd Enhancement/Habitual Paragraph: **N/A** |
| Findings on 1st Enhancement Paragraph: **N/A** | Findings on 2nd Enhancement/Habitual Paragraph: **N/A** |

| Punishment Assessed by: **Court** | Date Sentence Imposed: **5/1/2013** | Date Sentence to Commence: **5/1/2013** |
|---|---|---|

| | |
|---|---|
| Punishment and Place of Confinement: | **60 YEARS Institutional Division, TDCJ** |

THIS SENTENCE SHALL RUN **N/A.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR **N/A.**

| Fine: **N/A** | Court Costs: **$294.00** | Restitution: **N/A** | Restitution Payable to: ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) |
|---|---|---|---|



☒ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part thereof.

**Sex Offender Registration Requirements do not apply to the Defendant.** TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **N/A** .

<u>If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order.</u>

Time Credited:

From: 1/10/2012  To: 5/1/2013

<u>If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.</u>

**N/A Days  Notes: N/A**

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in TARRANT County, Texas. The State appeared by her District Attorney.

**<u>Counsel / Waiver of Counsel  (select one)</u>**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The Indictment was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and ORDERED it entered upon the minutes of the Court.

**<u>Punishment Assessed by Jury / Court / No election  (select one)</u>**

☐ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☒ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court FINDS Defendant committed the above offense and **ORDERS, ADJUDGES AND DECREES** that Defendant is **GUILTY** of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

**<u>Punishment Options  (select one)</u>**

☒ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the **Tarrant County District Clerk.** Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of  County, Texas on the date the sentence is to commence. Defendant shall be confined in the  County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the . Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a **FINE ONLY.** The Court ORDERS Defendant to proceed immediately to the Office of the  County . Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**<u>Execution / Suspension of Sentence  (select one)</u>**

☒ The Court ORDERS Defendant's sentence **EXECUTED.**

☐ The Court ORDERS Defendant's sentence of confinement **SUSPENDED.** The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.



## Furthermore, the following special findings or orders apply:

AFFIRMATIVE FINDING; A FIREARM

NOTICE OF APPEAL FILED: 5/1/13

---

Signed and entered on 5/7/2013

x  *George Gallagher*

JUDGE PRESIDING

12-3-12

CAUSE NUMBER 1266858

THE STATE OF TEXAS

VS

DAVON BARRETT

396TH DISTRICT COURT

OF

TARRANT COUNTY, TEXAS

## CONSULTATION SETTING PLEA OFFER ACKNOWLEDGEMENT

On the date shown below, the parties appeared in Court on this cause. The prosecutor and the Attorney for the Defendant both understand and acknowledge the following:

The Defendant is charged with the felony offense of: Agg Robbery - DW

Level of offense: _____ Felony of the _____ Degree, or _____ State Jail Felony,

or Class _____ Misdemeanor

If convicted, the Defendant faces the following range of punishment:

✓ Life, or   any term of not more than __99__ years or less than __5__ years In the Institutional Division of the Texas Department of Criminal Justice, and in addition, a fine not to exceed $10,000 may also Be assessed.

_____   A term of not less than 180 days or more than 2 years in the State Jail Facility, and in addition, a fine not to exceed $10,000 may also be Assessed.

THE PLEA BARGAIN RECOMMENDATION IS: 10 TDC

## ACKNOWLEDGEMENT OF PLEA BARGAIN OFFER

The above plea bargain offer is extended until _Indictment_ _____ (date) If the offer is not accepted and case pled by noted date, the offer is withdrawn.

By signing below, all parties acknowledge that the above plea offer has been conveyed to the Defendant on this date.

Attorney for Defendant
State Bar Number 24048608

Davon Barrett
Defendant

Assistant Criminal District Attorney
State Bar Number 24085724

_____
Judge Presiding

NAME  DAVON PAUL BARRETT

ADDRESS    1408 KILKENNY DR

　　　　　ARLINGTON TX 76002

RACE B    SEX M    AGE 23    DOB 5/7/1988

CASE NO. 1266858    DATE FILED    1/13/2012

CID NO.    0691166

OFFENSE  ROBBERY (AGG)

DATE  1/10/2012

I.P.  MONICA MARQUEZ

AGENCY  Grand Prairie PD

OFFENSE NO.  120000922

COURT 396th District Court

---

INDICTMENT NO.  1266858 *D*

---

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

**THE GRAND JURORS OF TARRANT COUNTY, TEXAS,**

duly elected, tried, empaneled, sworn, and charged to inquire of offenses committed in Tarrant County, in the State of Texas, upon their oaths do present in and to the

## 371st DISTRICT COURT

of said County that DAVON PAUL BARRETT, hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 10th day of January 2012, did

THEN AND THERE INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, THREATEN OR PLACE MONICA MARQUEZ IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO-WIT: A FIREARM,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Filed (Clerk's use only)

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

FEB 17 2012

TIME _12:50 pm_
BY _____ DEPUTY

_____
Criminal District Attorney
Tarrant County, Texas
INDICTMENT - ORIGINAL

_____
Foreman of the Grand Jury

6

CAUSE NO. 12668584 / 1272461A    1-30-12

| | | |
|---|---|---|
| STATE OF TEXAS | § | IN THE 396TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT |
| Onvar Burnett | § | |
| | § | TARRANT COUNTY, TEXAS |

FILED
THOMAS A WILDER, DIST CLERK
TARRANT COUNTY, TEXAS
JUL 30 2012
TIME
BY 1:00
DEPUTY

## STATUS CONFERENCE

On the date shown below, the parties appeared in court on this cause. The Prosecutor and the Attorney for the Defendant both understand and acknowledge the following:

Current Track Designation: □ Expedited □ Basic □ Complex

The Defendant is charged with the felony offense of: _____

_____

And the State is also proceeding on the:

□ _____Enhancement Notice

If convicted, the Defendant faces the following range of punishment:

☑ Life, or □ any term of not more than __99__ years or less than __✓__ years in the Institutional Division of the Texas Department of Criminal Justice, and in addition, a fine not to exceed $ __16.00__ may also be assessed.

□ a term of not less than 180 days or more than 2 years in the State Jail Facility, and in addition, a fine not to exceed $10,000 may be assessed.

□ The State is proceeding under Section 12.44(a), Texas Penal Code, and the Defendant may be punished by confinement in the county jail for a term not to exceed 1 year, or under Section 12.44(b), Texas Penal Code, and the Defendant may be punished by confinement in the county jail for a term not to exceed 1 year, by a fine not to exceed $4,000.00, or both such confinement and fine.

□ Other:_____

The final plea bargain recommendation is: __10 yrs TDCJ__

---

## DEFENDANT'S REJECTION OF FINAL PLEA BARGAIN OFFER

This plea bargain offer is available until the Status Conference is concluded. I understand that no settlement offers will be made after this date. The only disposition after this Conference will be by plea of guilty as charged or trial.

## PROSECUTOR'S CERTIFICATION OF TRIAL READINESS

The merits of the case have been thoroughly reviewed. Pretrial settlement negotiations have been unsuccessful and the case is ready for trial.

## STIPULATIONS

The parties hereto agree to the following stipulations: _____

_____

17

## TRIAL LENGTH AND DATE

The prosecutor and Defense Counsel represent that all pretrial motions and discovery have been completed and that all required witnesses are available for trial.

### TRIAL CHECKLIST

| | | |
|---|---|---|
| Type of Trial: | ☐ Jury Trial | ☐ TBC |
| Election of Punishment: | ☐ Jury | ☐ Court |
| Probation Eligible? | ☐ No | ☐ Yes |
| Prior Convictions Alleged? | ☐ Repeat Offender | ☐ Habitual Offender |
| Voir Dire Questionnaire: | ☐ Standard | ☐ Special_____ |
| Number of Jurors Needed | ☐ Standard | ☐ Special_____ |
| Interpreter Needed? | ☐ No | ☐ Yes_____ |
| Special Needs? | ☐ No | ☐ Yes_____ |

### HEARINGS CARRIED WITH TRIAL

☐ Identification    ☐ Motion to Suppress    ☐ Confessions

☐ Motions in Limine    ☐ Reputation    ☐ Evidence Admissibility

### NUMBER OF WITNESSES

Guilt/Innocence:_____ DA    _____ Defense

Punishment:    _____ DA    _____ Defense

Estimated length of trial (in days)_____

## TRIAL SETTING

The Jury will be summoned on: _____

Jury Questionnaires will be available on: _____

Trial will commence on:_____ at:_____ a.m./p.m.

## ACCEPTANCE OF NOTICE AND FIRM TRIAL DATE

By our signatures below, counsel for all parties accept notice of the trial date and waive all matters preliminary to trial except as entered on the record at the Status Conference. Defense Counsel and the Assistant District Attorney confirm their availability on the date of trial.

_____    _____
Attorney for Defendant    Assistant Criminal District Attorney
State Bar No.____1363335 0____    State Bar No._____

_____
Defendant

APPROVED:

_____    _____
Date    George Gallagher, Presiding Judge
    396th Judicial District Court, Tarrant County, Texas

18

INCIDENT HISTORY DETAIL: LAW/G120100366

Initiate: 13:31:50 01/10/12     Call/Case Nbr:
 G0366/GP1200000922+
Entry:     13:34:01             Current Status: ONSCENE
OK
Dispatch: 13:35:34             Primary Unit:   453
Onscene:  13:39:25             Jurisdiction:   GP
Close:                         Disposition:

Location: 2105 N HWY 360 SB ,GP (SEVEN ELEVEN AT NE
GREEN OAKS)
Loc Comments:
DAREA:     N1    Current:
Beat/Stn: 21    Map Page: 70      Type: ROB      Final:

RD:        1205T    Page: K       Priority: EP ROBBERY
                    Page:         HAZARD
PRIORS              □Detail

---

| 13:34:01 | ENTRY | TEXT:BM PULLED A GUN ON HER,LS YELLOWISH COLORED CAR |
| 13:34:01 | E911 | LOCATION:423CG NEXTEL WIRELESS,XX \PHONE:214/416-6799 \COMP:MAPSCO FW 70H / TX0423C-3 \SRC:WPH2 \LAT:32.7859389 LON:-97.0599389 \CONF: 0% \UNCERT: 3FT \PNUM:817/211-3849 |
| 13:34:01 | PRIOR | GP CHECK 01/05/12 @ 07:05:22 (40 MORE) |
| 13:34:33 | SUPP | TEXT:POSS HEADING SB ON 360,SUSP SAYING THEY WENT TOWARDS ARKANSAS |
| 13:35:06 | UPDATE | COMP:MAPSCO FW 70H / TX0423C-3-->MONICA |
| 13:35:06 | SUPP | TEXT:SUSP 2 BMS STOLE PURSE, \NAME:MONICA |
| 13:35:16 | SUPP | TEXT:FEMALE REFUSED EMS,CALLER HU CALLING BACK |

```
13:35:34   DISP-ENR   453 124
13:35:34   ID         453 (P224) NEW, GREGORY F.
13:35:34   ID         124 (P190) BROWN, LESLIE J.
13:36:07   SUPP       TEXT: COMPL IN A WHI TOYO SCION,
                       CALLER ONLY SAW ONE HANDGUN,
13:36:29   BACK-ER    124 160
13:36:29   ID         160 (P225) ANGUIANO, RAYMOND JR
13:36:33   SUPP       TEXT: SUSP PULLED GUN TO HER HEAD
                       AND ASKED FOR THE MONEY, SUSP GOT
                       INTO HER VEH
13:36:41   BACK-ER    124 126
13:36:41   ID         126 (P101) GARCIA, OSCAR
13:36:50   PREEMPT    126
13:36:50   REPLACE    126 127
13:36:50   ID         127 (P153) LEPAK, DENNIS J.
13:37:03   BACK-ER    127 126
13:37:03   ID         126 (P101) GARCIA, OSCAR
13:37:18   MISC       126, FROM CARRIER/DESCO
13:37:32   INSRVICE   124
13:37:55   MISC       453, ROY ORR/WN CARRIER
13:38:15   SUPP       TEXT: CALLER DIDNT GET ANYTHING
                       FURTHER ON SUSP VEH, NO LP, NO
                       DECALS OR STICKERS, ***SUSP VEH
                       LIGHT COLORED YELLOW PT CRUSIER***
13:38:35   MISC       .366 4, CALLING ARLINGTON PD AS
                       WELL
13:38:46   BACK-ER    127 121
13:38:46   ID         121 (P087) SZEMPRUCH, MITCH
13:39:25   ONSCENE    453
13:39:31   SUPP       TEXT: ***SPANISH SPEAKING FEMALE***
13:40:29   MISC       .366 4, REQ C140 TO BOLO SUSP INFO
                       TO SOUTH UNITS
13:41:40   ONSCENE    121
13:42:15   MISC       453, HAVING TO USE TRANSLATOR, TO
                       GET DESC
13:43:01   MISC       453, CORRECTION --BEIGE PT CRUISER
```

## CASE SUMMARY:

The complainant in this offense is Monica Marquez. The defendant in this offense is Davon Barrett.

On January 10, 2012 at 1:34 pm, Officer G. New #224 and Officer O. Garcia #101, responded to a robbery that had just occurred at the 7-11 Store, 2105 N. Hwy 360 #A, in which two black males stole a purse at gunpoint. With the aide of a translator, the Spanish-speaking caller described the suspect's vehicle as gray, yellow or beige in color. On arrival, Officer New met with Monica Marquez sitting in her white 2006 Toyota Scion alongside pump #2. Using a translator, Officer New learned that one of the suspects was armed with a silver semi-automatic pistol. After viewing the security video, Acting Sergeant R. Anguiano radioed the suspect's vehicle was a gray PT Cruiser type vehicle with the driver as a black male wearing a tan / light color sweatshirt and the passenger wearing a black hooded jacket.

Officer Garcia arrived at the store and interviewed Ms. Marquez. She advised that she had stopped at the 7-11 to get gasoline and pulled at pump number #2. She went inside to pay for gasoline and food items and walked back to her vehicle to pump the gas. As she was about to get into her car, she felt a blunt object thrust on her left ribcage. She turned and saw a black male holding a silver semi-automatic pistol against her side. Immediately, she darted around behind her car and rushed to the front of the store where she hid behind another customer's car parked nearby. Looking over the customer's car, she saw a gray PT Cruiser-type vehicle exiting the parking lot, heading southbound on S.H. 360. Marquez advised that her black Coach purse was stolen from underneath the driver's seat. The purse contained her Texas driver's license, Well Fargo debit card, Wal-Mart debit card, $800 pesos and $350-$400 in US currency. A description was broadcast of the suspect information.

Approximately 11 minutes later Police Chief Dye and Assistant Chief Trask located a silver Chevrolet HHR with temporary tag 13M4124 at the Shell station located at 3080 Mayfield getting gas. The subjects matched the physical description provided by the complainant. The subject wearing black walked out of their view and the subject wearing the light color clothing started to drive away. Chief Dye stopped the vehicle in the 2800 block of S. Hwy 360 and found that the driver, Davon Barrett, was operating the vehicle with a suspended license and Barrett was subsequently arrested. Barrett had $258.00 in his possession at the time of his arrest. The subject wearing black was not located.

Detectives A. Frizzell and T. Hinson responded to the location and reviewed the surveillance video and determined that the suspect vehicle was actually a silver Chevrolet HHR. The driver of the vehicle is seen getting out and approaching the complainant who turns and runs away. The driver then reaches inside her car and returns to the HHR. The passenger in the HHR gets out of the vehicle and is walking at the back of the car when the driver gets the purse and starts back to the vehicle. Both subjects get into the car and it leaves south on the 360 service road.

Officer Wallis #165 went to the EZ Mart and checked the area where the HHR was getting gas and located the black purse taken in the offense in a trash can near the gas pump where the vehicle was first observed by Chief Dye.

Officers reviewed the video from the Shell and saw the vehicle pull up to the pumps with Barrett driving. The subject in black is seen putting the purse in the trash can and walking away. Barrett puts gas in the vehicle and drives away before being stopped.

Det. Frizzell returned to the station and had the complainant prepare a written statement about the incident in Spanish. Frizzell prepared a six picture photo lineup that contained a picture of Barrett. Frizzell gave the complainant the lineup instruction sheet in Spanish and allowed her to read it. She did so and advised that she did not have any questions. Det. Scesney then showed the complainant the lineup but she was unable to identify Barrett because she only saw him for a matter of seconds and ran.

Frizzell obtained the complainant's purse from the property room and returned it to her. She advised that her Tx DL, a Wal-Mart card, a Wells Fargo Card, between $350 and $400 in U.S. currency, and 700 - 800 Mexican pesos were missing from her purse.

Det. Frizzell then met with Barrett in the jail and read him the Miranda Warning and Barrett agreed to discuss the case. During the interview, which was recorded, Barrett advised that he had started to FT. Worth to look for a job but traffic was too bad on NB 360. He said that he turned around and came back and received a call from a subject he knows as K-Ray or KT. He said that he stopped at the Windsprint Apartments at Arkansas and 360 and spoke with K-Ray / KT who said that he had been out hitting licks and needed a ride. He said that K-Ray / KT had a purse in his pants. He said that K-Ray was wearing a light sweat shirt like the one he had on. Barrett said that he took him to the Shell at 360 and Mayfield where K-Ray used a credit card at the pump to buy him gas and then walked away. He said that he was stopped as he left the location. Frizzell asked him about his vehicle being on video at the time of the offense and that it was only 11minutes later when he was seen at the EZ Mart. He said that K-Ray drives a vehicle just like the one that he was driving. It became obvious to Frizzell that the defendant was going to stick with that story so he stopped the interview.

On January 11, 2012 Det. Hinson obtained a search warrant for Barrett's HHR. The warrant was executed and CSI Katy Gildner took photographs of the vehicle. She processed the passenger side of the vehicle for finger prints in an effort to identify the other subject that walked away from the vehicle. A search of the vehicle was conducted and several documents were location with different names from the owner and the defendant. None of those documents were related to this case but were seized to see if they belong to other victims. CSI Katy Gildner located partial prints on the passenger door that were collected.

Det. Frizzell and Det. Hinson went to the 7-11 and obtained a copy of the video of the offense.

On January 12, 2012 Det. Frizzell met with Penny Banks at EZ Mart and obtained a copy of the video from that location.

Det. Frizzell prepared this case and filed it with the T.C.D.A. for prosecution while the defendant was in custody.

# Grand Prairie Police Department



1525 Arkansas Lane

Police Department
Nature of Call
RROB

Grand Prairie, TX 75052

(972)237-8790

(972)237-8744

Reported Date
01/10/2012

Officer
BOVINO,RAFAEL

## Administrative Information

| Agency | | | Report No | Supplement No | Reported Date | Reported Time |
|---|---|---|---|---|---|---|
| Grand Prairie Police Department | | | 12-922 | 0004 | 01/10/2012 | 22:11 |

| CAD Call No | Status | Nature of Call | | | | |
|---|---|---|---|---|---|---|
| 120100366 | ARREST | ROBBERY | | | | |

| Location | | | | City | | ZIP Code | Rep Dist |
|---|---|---|---|---|---|---|---|
| 2105 N HWY 360 SB | | | | Grand Prairie | | 75050 | 1205T |

| Area | Beat | From Date | From Time | Officer | | | |
|---|---|---|---|---|---|---|---|
| N1 | 2100 | 01/10/2012 | 13:31 | C358/BOVINO,RAFAEL | | | |

| Assignment | Entered by | Assignment | | RMS Transfer | Prop Trans Stat |
|---|---|---|---|---|---|
| SUPPORT - DETENTION | C358 | SUPPORT - DETENTION | | Successful | Successful |

| Approving Officer | Approval Date | Approval Time |
|---|---|---|
| C215 | 01/10/2012 | 22:21:26 |

## Narrative

**Add Additional Charge(s)** of: AGG ROBBERY 29.03  F1,  A/P BARRETT,DAVON

DO R.BOVINO C358

### Narrative: (REQUIRED)

In the County of: DALLAS

On 01/10/2012 at about 1815 hours, Det. Frizzell dropped off the affidavit to add a new charge to A/P Barrett, Davon. Charge was added. nothing further.

| Report Officer | Printed At | |
|---|---|---|
| C358/BOVINO,RAFAEL | 11/30/2012 15:09 | Page 1 of 1 |



Ex. 2

SHARON KELLER
PRESIDING JUDGE

LAWRENCE E. MEYERS
CHERYL JOHNSON
MIKE KEASLER
BARBARA P. HERVEY
ELSA ALCALA
BERT RICHARDSON
KEVIN P. YEARY
DAVID NEWELL
JUDGES

# COURT OF CRIMINAL APPEALS
P.O. BOX 12308, CAPITOL STATION
AUSTIN, TEXAS 78711

ABEL ACOSTA
CLERK
(512) 463-1551

SIAN SCHILHAB
GENERAL COUNSEL
(512) 463-1600

September 29, 2015

Looney & Conrad P.C.
RE: Davon P. Barrett #1854612
918 Austin Street
Hempstead, TX 77445

RE: Trial Court Case #1266858D

Dear Mr. Barrett:

We are returning this writ application because it does not comply with Article 11.07, Section 3(b) of the Code of Criminal Procedure.

A writ seeking relief from a final felony conviction under Code of Criminal Procedure Article 11.07 must be on the prescribed form and ***must be filed with the District Clerk in the county of the conviction.*** The District Clerk will then prepare a record and transmit to the Court of Criminal Appeals.

Sincerely,

Abel Acosta, Clerk

AA/kd
Enclosure

Ex. 5

LOONEY & CONRAD                                          October 6, 2015
918 Austin Street
Hempstead, Texas 77445


                                        CERTIFIED MAIL RETURN RECEIPT
                                        No. 7015 0640 0007 9315 9414


Criminal District Clerk
TARRANT COUNTY COURTHOUSE
100 East Weatherford Street
Fort Worth, Texas 76196


RE:     Original Application for a Writ of Habeas Corpus
        Pursuant to Art. 11.07 Tex. Code Crim. Proc.

        DAVON PAUL BARRETT, District Court Case No. 1266858
        396TH JUDICIAL DISTRICT COURT


Dear Clerk:

        ENCLOSED PLEASE FIND the original application for a writ of habeas corpus for filing in the above-referenced case. This office was notified this date that the document could not be e-filed as there is no e-filing for criminal documents.

        Please note additionally that this document was originally filed in the Texas Court of Criminal Appeals, in error, by mail, on September 23, 2015. This filing with your office is to correct that error.

        Thanking you in advance for your assistance and cooperation in this matter, and I remain,


                                        Sincerely,


                                        Brent Liedtke
                                        Legal Assistant to:
                                        Clay Conrad, esq.
                                        TBA # 00795301


CC: file

JBL/bl

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: _Davon Paul Barrett_

DATE OF BIRTH: _May 7, 1988_

PLACE OF CONFINEMENT: _H.H. Coffield Unit, Tennessee Colony, TX_

TDCJ-CID NUMBER: _01854612_ SID NUMBER: _____

(1) **This application concerns** (check all that apply):

☒ a conviction     ☐ parole

☐ a sentence     ☐ mandatory supervision

☐ time credit     ☐ out-of-time appeal or petition for discretionary review

(2) **What district court entered the judgment of the conviction you want relief from?**
(Include the court number and county.)

_396th District Ct., Tarrant County, TX_

(3) **What was the case number in the trial court?**

_1266858 D_

(4) **What was the name of the trial judge?**

_Hon. George Gallagher_

(5) Were you represented by counsel? If yes, provide the attorney's name:

Yes, LISA Mullen, GLYNIS A. McGinty, AL LAZARUS

(6) What was the date that the judgment was entered?

MAY 1, 2013

(7) For what offense were you convicted and what was the sentence?

AggRAVATED RobBeRy w/ DeADLY WeAPon

(8) If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?

N/A

(9) What was the plea you entered? (Check one.)

☐ guilty-open plea          ☐ guilty-plea bargain
☒ not guilty               ☐ *nolo contendere*/no contest

If you entered different pleas to counts in a multi-count indictment, please explain:

(10) What kind of trial did you have?

☐ no jury                   ☐ jury for guilt and punishment
                            ☒ jury for guilt, judge for punishment

2

(11) Did you testify at trial? If yes, at what phase of the trial did you testify?

_____ *No.* _____

(12) Did you appeal from the judgment of conviction?

☑ yes ☐ no

If you did appeal, answer the following questions:

(A) What court of appeals did you appeal to? _Second District_

(B) What was the case number? _02-13-00200-CR_

(C) Were you represented by counsel on appeal? If yes, provide the attorney's name:

_Lisa Mullen_

(D) What was the decision and the date of the decision? _Aff'd, June 5, 2014_

(13) Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A) What was the case number? _PD-0869-14_

(B) What was the decision and the date of the decision? _Refused, Oct. 1, 2014_

(14) Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes ☑ no

If you answered yes, answer the following questions:

(A) What was the Court of Criminal Appeals' writ number? _____

3

(B) What was the decision and the date of the decision? _____

(C) Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

(15) Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes          ☒ no

If you answered yes, please provide the name of the court and the case number:

_____

(16) If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes          ☒ no

If you answered yes, answer the following questions:

(A) What date did you present the claim? _____N/A_____

(B) Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

That is not the issue here -

4



(17) Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

INeffective Assistance in Plea

Bargain Process

**FACTS SUPPORTING GROUND ONE:**

SEE Attached MEMORANDUM

6

**GROUND TWO:**

INEFFECTIVE ASSISTANCE AT TRIAL -

FAILURE TO POINT OUT FLAWS IN EVIDENCE

**FACTS SUPPORTING GROUND TWO:**

See ATTACHED MEMORANDUM

8

**GROUND THREE:**

Ineffective assistance: Failure to note & argue contradictions between C/W's testimony and States video tape evidence showing no firearm used.

**FACTS SUPPORTING GROUND THREE:**

See attached

memorandum

**GROUND FOUR:**

Ineffective assistance for counsel's failure to note and argue the police investigation did not support aggravated robbery, nor interview or subpoena witness supporting the defense

**FACTS SUPPORTING GROUND FOUR:**

See attached memorandum

12

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF __HARRIS__

__CLAY S. CONRAD__, being duly sworn, under oath says: "I am the ~~applicant~~ / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of ~~Applicant~~ / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS __17__ DAY OF __August__, 20 __15__.

CRYSTAL LYNN ELDRIDGE
MY COMMISSION EXPIRES
September 19, 2018

_____
Signature of Notary Public

16

## PETITIONER'S INFORMATION

Petitioner's printed name: _CLAY S. CONRAD_

State bar number, if applicable: _00795301_

Address: _Looney & Conrad, P.C._

_11767 KATY FWY, #740_

_Houston TX 77079_

Telephone: _281-597-8818_

Fax: _281-597-8284_

## INMATE'S DECLARATION

I, _____, am the applicant / petitioner (circle one) and

being presently incarcerated in _____, declare under penalty of

perjury that, according to my belief, the facts stated in the above application are true and correct.

Signed on _____, 20_____.

_____
Signature of Applicant / Petitioner (circle one)

17

| | |
|---|---|
| *Ex Parte* | § |
| | § |
| **DAVON PAUL** | § |
| **BARRETT** | § |
| Applicant | §    WRIT NO. _____ |

## MEMORANDUM OF LAW ON APPLICATION FOR POSTCONVICTION WRIT OF HABEAS CORPUS PURSUANT TO ARTICLE 11.072 OF THE TEXAS CODE OF CRIMINAL PROCEDURE

To the Honorable Judges of the Texas Court of Criminal Appeals:

COMES NOW Davon Paul Barrett, Applicant, by and through his Attorney of Record, Clay S. Conrad, Petitioner, to petition this Honorable Court to grant a Writ of Habeas Corpus pursuant to Art. 11.07 *et seq.* of the Texas Code of Criminal Procedure, seeking that the conviction and judgment against him be vacated, and in support shows the following:

## I.

## STATEMENT OF FACTS

Applicant is presently being illegally and unconstitutionally confined and restrained of his liberty under color of a judgment and sentence against him from the 396th District Court, Tarrant County, Texas, Judge George Gallagher, Presiding. Applicant is currently serving a sixty (60) year sentence at the H.H. Coffield Unit in Tennessee Colony, Texas.

Applicant was convicted following a jury trial of Aggravated Robbery with a Deadly Weapon on May 1, 2014 in Cause No. 1266858D, Tarrant County, Texas.

1

The Applicant was sentenced by Judge Gallagher to sixty (60) years in the custody of the Texas Department of Criminal Justice on May 1, 2015.

Applicant filed a direct appeal in the 2nd Court of Appeals, Cause No. 02-13-00200-CR, which was decided against him in an unpublished opinion on June 5, 2014. He then filed a Petition for Discretionary Review before the Texas Court of Criminal Appeals, which was refused October 1, 2014 in Cause No. PD-0869-14. The mandate on this direct appeal issued November 10, 2014. This petition follows.

## II.

## JURISDICTIONAL STATEMENT

Jurisdiction is invoked pursuant to the provisions of Article 11.01, *et seq.*, of the Texas Code of Criminal Procedure. Applicant is unlawfully and unconstitutionally confined and restrained of his liberty in violation of Article I, Section 10 of the Texas Constitution and the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution. A copy of the relevant exhibits are hereto attached and incorporated by reference the same as if copied in full and set forth at length herein.

## III.

## GROUNDS FOR RELIEF

This restraint is unlawful because:

(1) Counsel Al Lazarus rendered ineffective assistance in that he failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea agreement prior to the expiration of the agreement, thus depriving Applicant of

2

the ability to make an informed decision concerning the 10 year plea agreement offered by the State.

(2) Counsel Glynis A. McGinty rendered ineffective assistance in that she failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea agreement prior to the expiration of the agreement, thus depriving Applicant of the ability to make an informed decision concerning the 10 year plea agreement that had been offered by the State.

(3) Counsel Glynis A. McGinty rendered ineffective assistance in that she failed to note and argue before the jury the contradictions between the videotape of the alleged crime and the complaining witness' initial report of the crime and her trial testimony, when the videotape revealed no firearm in the possession of Applicant nor Applicant coming within close proximity of the complainant to have held a firearm to her head, as she initially reported, nor to have held a firearm to her side as she testified at trial.

(4) Counsel rendered ineffective assistance by failing to note and argue that the aggravated robbery the State ultimately charged was unsupported by the police investigation, and Counsel failed to interview and subpoena witnesses to support such defense at trial.

## IV.

## ARGUMENT AND AUTHORITIES

**Ground One:**

> Counsel Lazarus rendered ineffective assistance in that he failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea bargain agreement prior to the expiration of the agreement, thus depriving Applicant of the ability to

3

make an informed decision concerning the 10 year plea agreement that had been offered by the State,

**Ground Two:**

Counsel McGinty rendered ineffective assistance in that she failed to investigate the law and the facts and advise Applicant as to the advisability of taking a plea bargain agreement prior to the expiration of the agreement, thus depriving Applicant of the ability to make an informed decision concerning the 10 year plea agreement that had been offered by the State.

**A.      Ground One: Ineffective Assistance of Counsel Rendered During Plea Negotiations by Counsel Lazarus.**

Prior to the trial of this case, offers of ten years' incarceration were made Counsel, not once, but twice. The first offer was made to counsel, ten years' incarceration, and the initial offer was held open until such time as Applicant was indicted. Counsel was appointed to represent Applicant on January 23, 2012. C.R. 12. The initial plea offer by the State of ten years' incarceration was made at the consultation hearing on February 3, 2012. See "Consultation Setting Plea Offer Acknowledgement, attached hereto and incorporated herein for all purposes, as well as, Affidavit of Davon Paul Barrett, likewise attached hereto and incorporated herein for all purposes. The indictment was returned two weeks later on February 17, 2012. (Attached).

4

In that two week period Counsel failed in his duty to conduct an independent investigation into the law and facts of the case. That two week period was critical in that the ten year offer was only good, per Counsel's agreement with the State, up to indictment. Applicant was in custody during this two week period, and Counsel failed to communicate with Applicant. During that two week period, it appears Counsel did nothing. It is beyond cavil that he did not visit Applicant in jail to speak with Applicant about the plea offer. Nor did he request additional time from the Tarrant County District Attorney's Office prior to seeking an indictment so that he could complete discovery and confer with Applicant. He simply let the offer lapse without action, and by doing so deprived Applicant of any opportunity to accept the outstanding ten year plea offer.

**B.    Ground Two: Ineffective Assistance during Plea Negotiations by Counsel McGinty**

The State again made a ten year offer, prior to the case going to trial, on July 30, 2012. (Attached). This offer was made at the Status Conference. The State held that offer open for only one day. At that time, Counsel McGinty was Applicant's

5

trial counsel. *Id.*[1] In light of the State's overwhelming case and the prior bad acts the State had noticed and intended to introduce at trial, Counsel had a duty to act with some urgency and advise Applicant concerning the merits of the ten year plea offer. In spite of this, Counsel did not discuss the advisability of accepting this offer with Applicant. In fact, Counsel failed to apprise Applicant that the ten year offer was available. It was not until it was too late for the offer to be accepted that Applicant learned of it.

## C. Harm Analysis

Prejudice is empirical. Applicant has sworn that if either Counsel had discussed with him the advisability of either of these plea offers, along with the risks of going to trial, he would have taken the offer. See Affidavit of Davon Paul Barrett, (Attached). Because both offers expired without his attorneys discussing them with him, he was deprived of the opportunity to accept them. See Affidavit of Davon Paul Barrett. (Attached). As Applicant received a sixty (60) year sentence following trial, the harm of being denied the opportunity to seriously consider and accept these plea offers is beyond serious debate. It is beyond cavil that an additional fifty (50) years

---

[1] While the record clearly shows that Ms. McGinty took over representation of the Applicant, the record does not show a Motion for Substitution. It is unclear from the record exactly when she took over the case.

of incarceration cannot sensibly be deemed "not prejudicial". The Supreme Court has declared that where sentencing is concerned even a single extra day in prison attributable to defense counsel's ineffectiveness is prejudicial. *United States vs. Glover*, 531 US 198 (2001). A ten year sentence, which Applicant should have been strongly advised to accept, and which Applicant would have accepted, was cavalierly left to expire on two occasions. Prejudice to Applicant is empirical under these facts. *See Ex parte Wilson*, 724 S.W.2d 72, 74 (Tex. Crim. App. 1987).

But both Counsels' ineffectiveness did not end with their collective unreasonable procrastination. Both Counsel failed to note that Applicant was, for all intents and purposes, predisposed to accept the plea agreement offered by the State. In the prior bad acts noticed by the State there is a collection of incidents in which bad acts were alleged, leading to a collection of arrests, followed by a collection of prosecutions by the same prosecution team heading the instant prosecution of Applicant. In each and every, all and singular, the prior bad acts that led to the arrest of Applicant that resulted in prosecutions being pursued Applicant pleaded GUILTY each and every time! Not once, in the prior bad acts alleged by the State, did this Applicant fail to waive his right to trial and plead guilty. Given the voluminous record of prior bad acts noticed by the State it would have been professionally reasonable for either Counsel to simply realize this case could be resolved with a

7

plea of guilty unless something defensible could be revealed in either Counsels' independent investigation of the facts of the case. As nothing was revealed by either Counsel, both Counsel rendered ineffective assistance in failing to note that Applicant was predisposed to waive trial and enter a plea of guilty immediately after either of the two ten year prison sentence offers were made by the State. Given this reality, Counsels' procrastination in resolving this case via plea of guilty and ten year sentence accepted is evermore unreasonable.

## D.   A Lawyer's Duty Concerning Plea Bargains

The Sixth Amendment, applicable to the States through the Fourteenth Amendment, provides that the accused shall have the assistance of counsel in all criminal prosecutions. The right to counsel so guaranteed is the right to effective assistance of counsel. See *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The Sixth Amendment requires that the accused receive effective assistance of counsel at all critical stages of litigation. *United States v. Cronic*, 466 U.S. 648, 659 (1984).

The negotiation and consideration of plea offers have been deemed critical stages of trial. "The negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla*

8

*v. Kentucky*, 559 U.S. 356, 373 (2010). A defense attorney has an obligation to fully advise his client of the terms and desirability of plea offers extended by the State. It is well established that a criminal defendant is entitled to effective assistance of counsel during the plea bargaining process. *Ex parte Wilson*, 724 S.W.2d 72, 73 (Tex.Crim.App. 1987). All plea bargain offers must be communicated promptly to the accused. *Id.* at 74. In *Wilson*, the Court of Criminal Appeals determined that counsel's failure to inform his client of a plea offer by the State fell below the objective standard of reasonableness which caused prejudice against the defendant and was, therefore, ineffective assistance of counsel.

To provide effective assistance concerning plea matters, "counsel has a duty to render his best judgment to his client about what plea to enter, and that judgment should be informed by an adequate and independent investigation of the facts of the case." *Ex parte Reedy*, 282 S.W.3d 492, 500 (Tex. Crim. App. 2009). Counsel has an absolute duty "to conduct a prompt investigation of the circumstances of the case and to explore all avenues likely to lead to facts relevant to the merits of the case." *Ex parte Briggs*, 187 S.W.3d 458, 467 (Tex. Crim. App. 2005). "Applicant was entitled to rely upon her counsel "to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered" based upon an informed investigation of the

9

facts…" *Id.* at 469, citing to *Von Moltke v. Gillies*, 332 U.S. 708, 721, 68 S. Ct. 316, 92 L. Ed. 309 (1948) and *McMann v. Richardson*, 397 U.S. 759, 769-70, 90 S. Ct. 1441, 25 L. Ed. 2d 763 (1970)(defense counsel must make his judgment as to the weight of the state's case and share his predictions with the defendant even though the predictions are necessarily uncertain).

Counsel Lazarus had a two week period of time to investigate the case and discuss the plea offer with Applicant. He failed. Applicant was prejudiced.

Counsel McGinty had a shorter period of time – one day. But even the "one day" is deceiving with respect to the issues presented herein. As Counsel admitted in her final day of trial voir dire examination of Applicant relative to his waiving his right to testify, Counsel had represented Applicant for "… almost a year …". However, it does not appear she ever discussed with Applicant the fact that the offer had been made, much less took the time to inform him of the evidence she was then aware of that would "lead to facts relevant to the merits of the case." *Reedy, supra.* The reset form containing notes of the offer was never signed by Applicant so there is no empirical evidence he was aware the offer was open. Applicant never had a meaningful and informed opportunity to consider either plea offer. Additionally, Counsel McGinty signed a reset form for TRIAL. It must be presumed that when she did this she had conducted here independent investigation, that she was aware

10

of the overwhelming evidence of guilt, of the prior bad acts of Applicant that were admissible at trial, and even of the reality that Applicant had pleaded guilty each and every opportunity he had to do so. Given these facts it seems that a professional attorney rendering reasonably effective assistance would have discussed the ten year plea offer sometime inside the 24 hour window allowed by the State to accept the plea offer.

The United States Supreme Court has noted:

> "The reality is that plea bargains have become so central to the administration of the criminal justice system that defense counsel have responsibilities in the plea bargain process, responsibilities that must be met to render the adequate assistance of counsel that the Sixth Amendment requires in the criminal process at critical stages. Because ours "is for the most part a system of pleas, not a system of trials," it is insufficient simply to point to the guarantee of a fair trial as a backstop that inoculates any errors in the pretrial process. "To a large extent . . . horse trading [between prosecutor and defense counsel] determines who goes to jail and for how long. That is what plea bargaining is. It is not some adjunct to the criminal justice system; it is the criminal justice system."... In today's criminal justice system, therefore, the negotiation of a plea bargain, rather than the unfolding of a trial, is almost always the critical point for a defendant."

*Missouri v. Frye*, 132 S.Ct. 1399, 1407 (2012)(citations omitted). *Frye* unambiguously held "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused... When defense counsel allowed the offer to expire without advising

11

the defendant or allowing him to consider it, defense counsel did not render the effective assistance the Constitution requires." *Id.* at 1408.

That case could not be more directly on point. Galin Frye was charged with his fourth offense of driving with a revoked license, a felony carrying a maximum sentence of four years. The State made two time-limited offers: 1) a 3-year sentence to the felony charge, no recommendation regarding probation but a recommendation that Frye serve 10 days in jail, or 2) to reduce the charge to a misdemeanor and recommend a 90-day sentence. Frye's attorney did not inform Frye of the offers, and they expired without Frye having had an opportunity to consider them. That is remarkably similar to the case herein, in which the State twice made ten-year offers, neither of which were investigated nor discussed with Applicant prior to their expiration.

The *Frye* Court continued, saying that:

"In order to complete a showing of *Strickland* prejudice, defendants who have shown a reasonable probability they would have accepted the earlier plea offer must also show that, if the prosecution had the discretion to cancel it or if the trial court had the discretion to refuse to accept it, there is a reasonable probability neither the prosecution nor the trial court would have prevented the offer from being accepted or implemented. ... It can be assumed that in most jurisdictions prosecutors and judges are familiar with the boundaries of acceptable plea bargains and sentences. So in most instances it should not be difficult to make an objective assessment as to whether or not a particular fact or intervening circumstance would suffice, in the normal course, to cause prosecutorial withdrawal or judicial nonapproval of a plea bargain. The

12

determination that there is or is not a reasonable probability that the outcome of the proceeding would have been different absent counsel's errors can be conducted within that framework."

*Id.* at 1410. The instant case involved a veteran prosecutor who well knew what agreements would have been accepted by the judge she was practicing before. Moreover, it is unrefuted that she was operating in good faith, and would not have revoked a plea offer absent the sort of material intervening circumstances that were not present herein. The best evidence of the fact that the offer would not be revoked is that the State left the offer open for a day prior to trial The obvious conclusion from these objective facts is that the State did not, and would not have, withdrawn the offer, and the trial court would have accepted it.

Without an informed opportunity to consider these plea offers, with the benefit of reasonable efforts by counsel to investigate the merits of the offers and advise their client, the Applicant was denied effective assistance of counsel. As a consequence, he is serving a sentence six (6) times what he would be serving, had he been advised properly by attorneys who had made the effort to conduct the basic discovery that the law requires.

**Ground Three:**

13

Counsel McGinty rendered ineffective assistance in that she failed to note and argue for the jury the contradictions between the videotape of the alleged crime and the complaining witness' initial report of the incident as against her testimony at trial, when the videotape revealed no firearm in the possession of Applicant nor Applicant ever coming in close proximity to the complaining witness to have held a "gun" to her head, as initially reported, nor to have shoved a "gun" in her side as she testified at trial.

A. Introduction

During the trial of this case, a videotape showing the interaction between the Applicant and the complaining witness was introduced as State's Exhibit 6. That videotape showed that the Applicant, at no point, had a firearm in his possession. Furthermore, even though the complaining witness initially reported that the suspect had held a gun to her head, (See Attached 911 report), and even though she testified that the suspect held a gun to her side. The State's own evidence, the 7-11 surveillance video, reveals that Applicant never came within close proximity to the complaining witness to commit either act, either hold a firearm to her head, or to hold a firearm to her side, in the course of committing theft from a person.

B. Argument.

14

Counsel McGinty failed in two regards. First, she failed to note and argue the 7-11 surveillance video evidence, State's Ex. 6, as evidence supporting a lesser included offense, of theft from a person, or for simple robbery. The indictment charged the commission of the crime with the use of a deadly weapon, and the 7-11 surveillance evidence was actually exculpatory evidence that Applicant never possessed a firearm, nor used a firearm, in the commission of any crime. At a bare and forgiving minimum, if Counsel was willing to proceed to trial without discussing the ten year plea offer with Applicant in the 24 hours prior to trial, she must be held accountable for noting and arguing that the aggravating element of this crime was not proven by the State's own evidence.

Second, Counsel McGinty never used this 7-11 videotape to impeach the complaining witness. Both the initial report to police, that the actor held a gun to her head, and the trial testimony, that the actor held the gun to her side, are disputed by the State's surveillance video evidence. In fact, the disparities between the video and the testimony was mentioned in closing, but Counsel failed to effectively confront the complaining witness on cross-examination regarding the inconsistencies in her testimony and the 7-11 surveillance video evidence.

15

Third, it is clear from Counsel's closing that she failed to note and argue the relevance of the 7-11 surveillance video evidence. Though Counsel made an oral motion for directed verdict of acquittal prior to beginning her closing, (R.Vol.Tr.Vol.V,p.5), it appears Counsel was unaware of the relevance of the surveillance video evidence, altogether. Counsel did ask the jury to consider the video tape, but she demonstrated not an inkling of understanding of the relevance of the evidence. Counsel stated: "...Look at the video. Compare it with her testimony. That's impossible. Didn't happen like that. Couldn't have. You're looking at it. There wasn't enough time. (R.Vol.Tr., Vol.V., pp.14-15). The relevance of this video tape evidence is NOT to establish a time line for the commission of the crime, rather, it establishes Applicant never possessed a firearm, never held a firearm to the Complainant's head or person, and in the end, it is THE EVIDENCE supporting Counsel's claim on her oral motion for directed verdict of acquittal, supra., that the State had failed to prove beyond a reasonable doubt ... and as counsel put it: "... they failed to commit an aggravated robbery in this matter ...". ID., (R.Vol.Tr.Vol.V., p. 5).

There is far more than a reasonable probability that, had trial counsel noted the real relevance of the surveillance video exculpatory evidence, and if Counsel had argued the real relevance of this evidence to the jury, or even confronted the

16

Complainant with the contradictions between her initial report and her testimony at trial with that evidence, the outcome of the jury's verdict would have differed, and Applicant would not have been convicted of aggravated robbery. The jury would have been confronted with the reality that the evidence, taken as a whole, was that Applicant, if he committed any crime at all, did NOT commit an aggravated robbery because the evidence showed he never possessed a firearm, at all.

The 7-11 surveillance video evidence, likewise, was not challenged as being the best evidence of what occurred that day. In fact, the State introduced other surveillance video evidence from the E-Z Mart, where Applicant was arrested, because it was that evidence that connected Applicant to the Complainant's purse, found in a garbage can, after the dark hooded sweater wearing suspect was seen on video putting something in a trash can, where the Complainant's purse was found by officers. That was competent evidence, not because Applicant says so, but because it was offered into evidence by the State and admitted without objection. Likewise, the 7-11 surveillance video evidence held the same relevance.

Counsel has a constitutional obligation to prepare, and it is presumed by the Supreme Court that counsel does prepare for trial, but that presumption is a

rebuttable one. ID. *Strickland*, supra. at 466 US at 687-91; SEE ALSO: *KIMMELMAN v MORRISON*, 477 US 365, 375 (1986). Merely being aware of the existence of the 7-11 surveillance video evidence did not constitute preparation. Preparation included understanding the relevance of the evidence, which Counsel failed to do. It would be one thing if the video evidence was meaningless, but it was not. It was relevant to the State's case, and in the end, it was relevant to the very argument Counsel offered on her oral motion for directed verdict that the State had failed to prove every element of an aggravated robbery beyond a reasonable doubt. There can hardly be a more definitive example of a lawyer's failings resulting in ineffective assistance, to the prejudice of the defendant. Counsel not only failed to resolve this case with a plea bargained sentence fifty years less than the sentence ultimately imposed, but when Counsel proceeded to trial she did so without an inkling of the relevance of exculpatory evidence made available to her, not through her own investigation, but from the office of the prosecutors. The State met its obligation to produce exculpatory evidence. The failing was upon Counsel, and Counsel alone, when she failed in her obligation to note and argue the relevance of that very evidence. That Counsel rendered ineffective assistance under these facts and circumstances is clear, unequivocal.

18

**Ground Four.**

Counsel rendered ineffective assistance by failing to note and argue that the aggravated robbery the State ultimately charged was unsupported by a the police investigation, and Counsel failed to interview and subpoena witnesses in support of such defense.

A. Introduction.

Again, Counsel McGinty failed in two respects. The first indicates Counsel's failure to properly investigate and apply the results of that investigation to the task of providing an effective defense. The second indicates Counsel's failure to properly prepare for trial by compelling the attendance of relevant witnesses, albeit those witnesses were police detectives and clearly adverse to Applicant's defense.

In the first instance each and every initial report of this incident treated this investigation as a "robbery", not an "aggravated robbery", and the reason for such is clear. The crime, whatever it was, was not an "aggravated" robbery with the suspect committing "robbery" through use of a deadly weapon, to wit: a "firearm". It is not like this crime was committed in a vacuum. It was committed on camera in the full view of investigating detectives. Robbery detectives A. Frizzell (Badge #P178) and Hinson were assigned. Both detectives viewed the 7-11 surveillance video, and both

19

detectives were aware that there was no "firearm" used in the commission of the crime. In all reports authored by Detective Frizzell there was never a mention, not even once, of the use of a firearm in the commission of the crime. During all of this reporting it was "robbery" that was reported, not "aggravated robbery", and the reason is clear why. There was no firearm. Frizzell and Hinson viewed the video in which it is shown that the actor approached the Complainant, and the Complainant ran away immediately. Complainant was not subjected to a gun being placed at her head, as she had reported, and she was not subjected to a gun being held to her side, as she testified. Two witnesses were aware of these facts, and their names were known through their reports, and Counsel failed to subpoena them for trial.

And in the second instance Detective Frizzell is the person responsible for filing what he referred to as "additional charges" against Applicant, and it was these "additional charges" that resulted in the "aggravated" robbery being added. Detective Frizzell interviewed Applicant after his arrest while he was in the custody of the Tarrant County Jail. It was after that interview, wherein Applicant refused to confess to the robbery, that Detective Frizzell decided to "add" the charge of aggravated robbery. Detective Frizzell reported: "I met with Barrett in the jail ... to discuss the case. (Barrett gave his version of what occurred which did not have him confessing any involvement in the robbery...) ...It became obvious to me that the

20

defendant was going to stick with that story so I stopped the interview. **I added a charge of Aggravated Robbery to Devon Barrett because of the fact that the driver of the vehicle who was wearing the same clothes as Barrett is the subject seen on video committing the offense.**" (Attached Report of Det. Frizzell).

But there was more exculpatory evidence from police officers not the subject of defense subpoena for the trial. Applicant was never identified by Complainant. She had reported that the person who robbed her was right next to her, holding a gun to her head or her side, whichever, but Complainant could not pick Applicant out of a lineup. Detective Scesney showed the Complainant a photo lineup with Applicant's photo included in the array, but Complainant was unable to identify Applicant as the robber. Counsel did not subpoena Detective Scesney for trial, either.

B. Argument.

It is axiomatic that counsel is presumed to have prepared for trial, and likewise, that this presumption is rebuttable. One instance of actionable ineffective assistance was reviewed by the Supreme Court two years after the leading case on the issue was decided, *Strickland v Washington*, in 1984. In 1986 the Court reviewed *Kimmelman v Morrison*, supra. Mr. Kimmelman had been convicted, in a trial, of rape, and at trial he testified that the rape victim had never been in his apartment, much less raped in his apartment. What his counsel had failed to do, however, was

21

to file a discovery motion for objects seized by the police at the time of the arrest. Police had seized a bed sheet from Kimmelman's bed, and it was the victim's blood stains on that bed sheet that caused the jury to convict. The Court determined that it was ineffective assistance for Kimmelman's counsel not to discover the blood stained bed sheet, as that sheet had been illegally seized with a warrantless search of Kimmelman's apartment. Applicant's Counsel's failings were analogous.

Counsel failed to review the detective's reports, failed to learn that it was "robbery", not "aggravated robbery" that was charged initially, and that charge was predicated upon the detectives' review of the 7-11 surveillance video revealing no "firearm" possessed by Applicant. Counsel failed to subpoena the officer who conducted the photo array in which Complainant was unable to identify Applicant, a failing that is consistent with her running from her attacker long before he was in close enough proximity to put a gun either her head, as she reported initially, or to her side, as she reported later and testified to at trial.

Counsel is just not free to fail to successfully marshal all exculpatory evidence in support of her theory of defense at trial. It is clear, from Counsel's closing and the motion for directed verdict filed orally prior to her closing, that the trial defense was that Complainant could not be believed, that there was no firearm to support a conviction for "aggravated" robbery. Certainly, the testimony of Detectives Frizzell

22

and Hinson would have supported that defense theory, and the testimony of Detective Scesney would have supported the theory that Complainant was never in close proximity of the actor at the time of the incident. It simply cannot be concluded that Counsel's failings were not ultimately prejudicial to Applicant's defense, nor that the outcome would not have differed had Counsel not failed in this manner. Reasonably professional attorneys rendering reasonably effective assistance are not permitted under the law to fail so completely in preparation of a case scheduled for jury trial, especially when that jury trial is only occurring because the same Counsel failed to discuss the terms of a plea bargain agreement that the defendant would most certainly have accepted.

## CONCLUSION AND PRAYER

It is clear that Applicant did not receive the effective assistance of counsel. Two plea offers were allowed to expire prior to the Applicant having a chance to consider and accept them. Evidence that would have shown Applicant was guilty only of a less serious offense was not investigated or used by his trial counsel. The Applicant, after these events, received the maximum sentence Texas law allows for his offense. At critical points in this trial, Counsel failed Applicant, and were

23

ineffective, as a matter of law, under the Sixth and Fourteenth Amendments to the United States Constitution.

At trial, critical exculpatory evidence supporting the defense theory was neither made available for presentation, but more importantly, was not presented to the very jury Counsel was seeking to accept the reality that no aggravated robbery was committed. This type of unpreparedness is sufficient to overcome the legal presumption that counsel prepared for trial as required by law.

WHEREFORE, Applicant prays that this Texas Court of Criminal Appeals issues a writ of habeas corpus, to the end that the State of Texas is ORDERED to respond to the instant application for habeas relief, to the end that habeas corpus relief is GRANTED in all things, that the judgment is vacated, and that Applicant is REMANDED to the District Court for further proceedings wherein Applicant is permitted to accept the ten year plea agreement and be sentenced accordingly. Applicant prays for any and all such other relief to which he may show himself entitled, including general relief.

Respectfully submitted,

By: _Clay S. Conrad_  w/permission

24

State Bar of Texas # 00795301
11767 Katy Freeway, Ste. 740
Houston, TX 77079
Tel: (281) 597-8818
Fax: (281) 597-8284

COUNSEL FOR APPLICANT

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above *Application for Postconviction Writ of Habeas Corpus Pursuant to Article 11.072 of the Texas Code of Criminal Procedure* was hereby mailed to the office of the Travis County Attorney, 300 County Administration Building, 314 W. 11th Street, P.O. Box 1748, Austin, TX 78767-1748.

Dated September 23, 2015.

Clay S. Conrad

26

COUNTY OF HARRIS                    *

STATE OF TEXAS                     *

## <u>AFFIDAVIT OF DAVON PAUL BARRETT</u>

BEFORE ME, the Undersigned Notary Public, appeared a person identified to me as Davon Paul Barrett, who reported as follows:

"My name is Davon Paul Barrett. I am currently incarcerated at the H.H. Coffield Unit, 2661 FM 2054, Tennessee Colony, TX 75884. I am over 21 years of age and competent to write this affidavit. The facts herein related are true and correct and of my own personal knowledge.

"I was arrested on or about January 13, 2012. On the second setting, a ten year plea bargain offer was made on my case. My lawyer told me about it in court, but never discussed with me of the desirability of the plea offer. In fact, she never discussed it with me at all, just let me know it was there. I was indicted on February 17, 2012, and due to the indictment I was told the offer was no longer available. If my attorney had taken time to discuss this plea offer or the risks of going to trial with me during the two weeks during which this offer was available, I would have accepted that offer. By letting this offer expire before discussing it with me, I believe my lawyer cost me the opportunity to accept it.

"Another ten year offer was made on or about July 30, 2012, but it was not discussed with me at that time. If my attorney had taken time to discuss this plea offer or the risks of going to trial with me on that date, I would have accepted that offer. By letting this offer expire before discussing it with me, I believe my lawyer cost me the opportunity to accept it.

"I went to trial without my lawyer ever sitting down and discussing any plea offers with me except in the most general terms. She was not available to answer my questions. She never spoke to me outside of court, and spent very little time with me discussing the case in court. I do not believe that my trial lawyers represented me properly.

"Because I never had a discussion with my lawyer about the terms or desirability of any pleas offers the State made, I ended up going to and was sentenced to sixty years in prison. I understand that I was found guilty, but I believe that when plea offers were made, I should have been given the information to intelligently consider them.

"Further I sayeth not."

_Davon Barrett_
Davon Paul Barrett

SWORN AND SUBSCRIBED TO BEFORE ME on July 13, 2015.

**Gaye L. Karriker**
Notary Public, State of Texas
My Commission Expires
07/20/2015
**Notary Without Bond**

_Gaye L. Karriker_
Notary Public in and for the State of Texas

# LIST OF APPLICANT'S EXHIBITS

Consultation Setting Plea Offer Acknowledgement evidencing a plea offer of ten years confinement in TDCJ as of February 3, 2012.

Indictment indicating the 10 year plea offer was open for two weeks.

Status Conference report from when Counsel McGinty represented the Applicant indicating that as of July 30, 2012 there was, again, a ten yr. Offer from the State, open for one day, signed by Counsel and not by Applicant, indicating Applicant never agreed to refuse the offer. (It is noted that the Status Conference was conducted in the courtroom, and Applicant was available to participate as he was still in custody.)

911 Call Report from January 10, 2012 at 1:31 PM, report # G0366/GP 1200000922+, from the 7-11 store at 2105 N. Hwy 360 SB in Grand Prairie, Texas, in which Complainant first reported that the suspect did Place a gun to her head …

Incident Reports filed by Detectives Frizzell and Hinson wherein it is reported that they both viewed the surveillance video from the 7-11 and no firearm was possessed by the actor, and rather, the suspect approached the Complainant without a firearm and the Complainant ran immediately and before the suspect(s) came into close proximity with Complainant…

Additionally these reports indicate it was a "robbery" and not an "aggravated robbery" being investigated as there was no firearm seen on the 7-11 surveillance video… and also reported is Det. Frizzell's "adding charges" to Applicant, not because of the existence of a firearm in the commission of the offense, but because Applicant "stuck to his story" and did not confess committing the robbery being investigated by Det. Frizzell; and finally, also reported is the report of the photo array that resulted in no identification of Applicant, consistent with the video evidence that the suspect never was within close proximity of Complainant so she was unlikely to be unable to

identify the perpetrator because he was never close enough to see ... as is also corroborated by the 7-11 surveillance video evidence ...



| THE STATE OF TEXAS | § | IN THE 396TH DISTRICT COURT |
|---|---|---|
| v. | § § § | |
| DAVON PAUL BARRETT | § § | TARRANT COUNTY, TEXAS |
| STATE ID NO.: TX07313570 | § § | |

## JUDGMENT OF CONVICTION BY JURY

| Judge Presiding: | HON. GEORGE GALLAGHER | Date Judgment Entered: | 5/1/2013 |
|---|---|---|---|
| Attorney for State: | JOE SHANNON, JR. HEATHER DAVENPORT WILLIAM VASSAR | Attorney for Defendant: | BETHANY GROHAM GLYNIS A MCGINTY |

Offense for which Defendant Convicted:

**AGGRAVATED ROBBERY WITH A DEADLY WEAPON, TO-WIT: A FIREARM**

| Charging Instrument: | Statute for Offense: |
|---|---|
| Indictment | 29.03 PC |

Date of Offense:

1/10/2012

| Degree of Offense: | Plea to Offense: |
|---|---|
| 1ST DEGREE FELONY | NOT GUILTY |

| Verdict of Jury: | |
|---|---|
| | Findings on Deadly Weapon: |
| Guilty | Yes, a firearm |

| Plea to 1st Enhancement Paragraph: | Plea to 2nd Enhancement/Habitual Paragraph: |
|---|---|
| N/A | N/A |

| Findings on 1st Enhancement Paragraph: | Findings on 2nd Enhancement/Habitual Paragraph: |
|---|---|
| N/A | N/A |

| Punishment Assessed by: | Date Sentence Imposed: | Date Sentence to Commence: |
|---|---|---|
| Court | 5/1/2013 | 5/1/2013 |

| Punishment and Place of Confinement: | 60 YEARS Institutional Division, TDCJ |
|---|---|

THIS SENTENCE SHALL RUN **N/A.**

☐ SENTENCE OF CONFINEMENT SUSPENDED, DEFENDANT PLACED ON COMMUNITY SUPERVISION FOR N/A.

| Fine: | Court Costs: | Restitution: | Restitution Payable to: |
|---|---|---|---|
| N/A | $294.00 | N/A | ☐ VICTIM (see below) ☐ AGENCY/AGENT (see below) |



☒ Attachment A, Order to Withdraw Funds, is incorporated into this judgment and made a part thereof.

**Sex Offender Registration Requirements do not apply to the Defendant.** TEX. CODE CRIM. PROC. chapter 62.

The age of the victim at the time of the offense was **N/A** .

If Defendant is to serve sentence in TDCJ, enter incarceration periods in chronological order.

Time
Credited:    From: 1/10/2012   To: 5/1/2013

If Defendant is to serve sentence in county jail or is given credit toward fine and costs, enter days credited below.

**N/A Days Notes: N/A**

All pertinent information, names and assessments indicated above are incorporated into the language of the judgment below by reference.

This cause was called for trial in TARRANT County, Texas. The State appeared by her District Attorney.

**Counsel / Waiver of Counsel (select one)**

☒ Defendant appeared in person with Counsel.

☐ Defendant knowingly, intelligently, and voluntarily waived the right to representation by counsel in writing in open court.

It appeared to the Court that Defendant was mentally competent and had pleaded as shown above to the charging instrument. Both parties announced ready for trial. A jury was selected, impaneled, and sworn. The Indictment was read to the jury, and Defendant entered a plea to the charged offense. The Court received the plea and entered it of record.

The jury heard the evidence submitted and argument of counsel. The Court charged the jury as to its duty to determine the guilt or innocence of Defendant, and the jury retired to consider the evidence. Upon returning to open court, the jury delivered its verdict in the presence of Defendant and defense counsel, if any.

The Court received the verdict and ORDERED it entered upon the minutes of the Court.

**Punishment Assessed by Jury / Court / No election (select one)**

☐ **Jury.** Defendant entered a plea and filed a written election to have the jury assess punishment. The jury heard evidence relative to the question of punishment. The Court charged the jury and it retired to consider the question of punishment. After due deliberation, the jury was brought into Court, and, in open court, it returned its verdict as indicated above.

☒ **Court.** Defendant elected to have the Court assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

☐ **No Election.** Defendant did not file a written election as to whether the judge or jury should assess punishment. After hearing evidence relative to the question of punishment, the Court assessed Defendant's punishment as indicated above.

The Court FINDS Defendant committed the above offense and ORDERS, ADJUDGES AND DECREES that Defendant is GUILTY of the above offense. The Court FINDS the Presentence Investigation, if so ordered, was done according to the applicable provisions of TEX. CODE CRIM. PROC. art. 42.12 § 9.

The Court ORDERS Defendant punished as indicated above. The Court ORDERS Defendant to pay all fines, court costs, and restitution as indicated above.

**Punishment Options (select one)**

☒ **Confinement in State Jail or Institutional Division.** The Court ORDERS the authorized agent of the State of Texas or the Sheriff of this County to take, safely convey, and deliver Defendant to the **Director, Institutional Division, TDCJ.** The Court ORDERS Defendant to be confined for the period and in the manner indicated above. The Court ORDERS Defendant remanded to the custody of the Sheriff of this county until the Sheriff can obey the directions of this sentence. The Court ORDERS that upon release from confinement, Defendant proceed immediately to the **Tarrant County District Clerk.** Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **County Jail Confinement / Confinement in Lieu of Payment.** The Court ORDERS Defendant immediately committed to the custody of the Sheriff of County, Texas on the date the sentence is to commence. Defendant shall be confined in the County Jail for the period indicated above. The Court ORDERS that upon release from confinement, Defendant shall proceed immediately to the . Once there, the Court ORDERS Defendant to pay, or make arrangements to pay, any remaining unpaid fines, court costs, and restitution as ordered by the Court above.

☐ **Fine Only Payment.** The punishment assessed against Defendant is for a FINE ONLY. The Court ORDERS Defendant to proceed immediately to the Office of the County . Once there, the Court ORDERS Defendant to pay or make arrangements to pay all fines and court costs as ordered by the Court in this cause.

**Execution / Suspension of Sentence (select one)**

☒ The Court ORDERS Defendant's sentence EXECUTED.

☐ The Court ORDERS Defendant's sentence of confinement SUSPENDED. The Court ORDERS Defendant placed on community supervision for the adjudged period (above) so long as Defendant abides by and does not violate the terms and conditions of community supervision. The order setting forth the terms and conditions of community supervision is incorporated into this judgment by reference.

The Court ORDERS that Defendant is given credit noted above on this sentence for the time spent incarcerated.

**99**



## Furthermore, the following special findings or orders apply:

AFFIRMATIVE FINDING; A FIREARM

NOTICE OF APPEAL FILED: 5/1/13

---

Signed and entered on 5/7/2013

X <u>*George Gallagher*</u>

JUDGE PRESIDING

12-3-12

CAUSE NUMBER 1266858

THE STATE OF TEXAS

VS

Davon Barnett

396TH DISTRICT COURT

OF

TARRANT COUNTY, TEXAS

## CONSULTATION SETTING PLEA OFFER ACKNOWLEDGEMENT

On the date shown below, the parties appeared in Court on this cause. The prosecutor and the Attorney for the Defendant both understand and acknowledge the following:

The Defendant is charged with the felony offense of: Agg Robbery - DW

Level of offense: _____Felony of the_____Degree, or_____State Jail Felony,

or Class_____ Misdemeanor

If convicted, the Defendant faces the following range of punishment:

✓ Life, or        any term of not more than __99__ years or less than __5__ years In the Institutional Division of the Texas Department of Criminal Justice, and in addition, a fine not to exceed $10,000 may also Be assessed.

_____        A term of not less than 180 days or more than 2 years in the State Jail Facility, and in addition, a fine not to exceed $10,000 may also be Assessed.

THE PLEA BARGAIN RECOMMENDATION IS: 10 TDC

## ACKNOWLEDGEMENT OF PLEA BARGAIN OFFER

The above plea bargain offer is extended until _Indictment_ _____(date) If the offer is not accepted and case pled by noted date, the offer is withdrawn.

By signing below, all parties acknowledge that the above plea offer has been conveyed to the Defendant on this date.

Attorney for Defendant
State Bar Number 24048608

Davon Barnett
Defendant

Assistant Criminal District Attorney
State Bar Number 24085774

Judge Presiding

NAME  DAVON PAUL BARRETT

ADDRESS  1408 KILKENNY DR

        ARLINGTON TX 76002

RACE B  SEX M  AGE 23  DOB 5/7/1988

CASE NO. 1266858  DATE FILED  1/13/2012

CID NO.  0691166

OFFENSE  ROBBERY (AGG)

DATE  1/10/2012

I.P. MONICA MARQUEZ

AGENCY Grand Prairie PD

OFFENSE NO. 120000922

COURT 396th District Court

INDICTMENT NO. 1266858 D

IN THE NAME AND BY AUTHORITY OF THE STATE OF TEXAS:

**THE GRAND JURORS OF TARRANT COUNTY, TEXAS,**

duly elected, tried, empaneled, sworn, and charged to inquire of offenses committed in Tarrant County, in the State of Texas, upon their oaths do present in and to the

## 371st DISTRICT COURT

of said County that DAVON PAUL BARRETT, hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 10th day of January 2012, did

THEN AND THERE INTENTIONALLY OR KNOWINGLY, WHILE IN THE COURSE OF COMMITTING THEFT OF PROPERTY AND WITH INTENT TO OBTAIN OR MAINTAIN CONTROL OF SAID PROPERTY, THREATEN OR PLACE MONICA MARQUEZ IN FEAR OF IMMINENT BODILY INJURY OR DEATH, AND THE DEFENDANT USED OR EXHIBITED A DEADLY WEAPON, TO-WIT: A FIREARM,

AGAINST THE PEACE AND DIGNITY OF THE STATE.

Filed (Clerk's use only)

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

FEB 17 2012

TIME _12:50 pm_
BY _____ DEPUTY

_____
Criminal District Attorney
Tarrant County, Texas
INDICTMENT - ORIGINAL

_____
Foreman of the Grand Jury

6

CAUSE NO. _12-668584 / _____

| STATE OF TEXAS | § | IN THE 396TH JUDICIAL |
| | § | |
| VS. | § | DISTRICT COURT |
| _Owen Barrett_ | § | |
| | § | TARRANT COUNTY, TEXAS |

FILED
THOMAS A. WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS
JUL 3 0 2012
TIME_____
BY_____
_____ DEPUTY

## STATUS CONFERENCE

On the date shown below, the parties appeared in court on this cause. The Prosecutor and the Attorney for the Defendant both understand and acknowledge the following:

Current Track Designation:    □ Expedited    □ Basic    □ Complex

The Defendant is charged with the felony offense of: _____

_____

And the State is also proceeding on the:

□ _____ Enhancement Notice

If convicted, the Defendant faces the following range of punishment:

☑ Life, or   □   any term of not more than __99__ years or less than __✓__ years in the Institutional Division of the Texas Department of Criminal Justice, and in addition, a fine not to exceed $ __10,000__ may also be assessed.

□   a term of not less than 180 days or more than 2 years in the State Jail Facility, and in addition, a fine not to exceed $10,000 may be assessed.

□   The State is proceeding under Section 12.44(a), Texas Penal Code, and the Defendant may be punished by confinement in the county jail for a term not to exceed 1 year, or under Section 12.44(b), Texas Penal Code, and the Defendant may be punished by confinement in the county jail for a term not to exceed 1 year, by a fine not to exceed $4,000.00, or both such confinement and fine.

□   Other: _____

The final plea bargain recommendation is: _____ _10 yrs TDCJ_ _____

---

### DEFENDANT'S REJECTION OF FINAL PLEA BARGAIN OFFER

This plea bargain offer is available until the Status Conference is concluded. I understand that no settlement offers will be made after this date. The only disposition after this Conference will be by plea of guilty as charged or trial.

### PROSECUTOR'S CERTIFICATION OF TRIAL READINESS

The merits of the case have been thoroughly reviewed. Pretrial settlement negotiations have been unsuccessful and the case is ready for trial.

### STIPULATIONS

The parties hereto agree to the following stipulations: _____

_____

17

## TRIAL LENGTH AND DATE

The prosecutor and Defense Counsel represent that all pretrial motions and discovery have been completed and that all required witnesses are available for trial.

### TRIAL CHECKLIST

| | | |
|---|---|---|
| Type of Trial: | ☐ Jury Trial | ☐ TBC |
| Election of Punishment: | ☐ Jury | ☐ Court |
| Probation Eligible? | ☐ No | ☐ Yes |
| Prior Convictions Alleged? | ☐ Repeat Offender | ☐ Habitual Offender |
| Voir Dire Questionnaire: | ☐ Standard | ☐ Special_____ |
| Number of Jurors Needed | ☐ Standard | ☐ Special_____ |
| Interpreter Needed? | ☐ No | ☐ Yes_____ |
| Special Needs? | ☐ No | ☐ Yes_____ |

### HEARINGS CARRIED WITH TRIAL

| | | |
|---|---|---|
| ☐ Identification | ☐ Motion to Suppress | ☐ Confessions |
| ☐ Motions in Limine | ☐ Reputation | ☐ Evidence Admissibility |

### NUMBER OF WITNESSES

Guilt/Innocence:_____ DA _____ Defense

Punishment: _____ DA _____ Defense

Estimated length of trial (in days)_____

---

## TRIAL SETTING

The Jury will be summoned on: _____

Jury Questionnaires will be available on: _____

Trial will commence on:_____ at:_____ a.m./p.m.

---

## ACCEPTANCE OF NOTICE AND FIRM TRIAL DATE

By our signatures below, counsel for all parties accept notice of the trial date and waive all matters preliminary to trial except as entered on the record at the Status Conference. Defense Counsel and the Assistant District Attorney confirm their availability on the date of trial.

_____
Attorney for Defendant
State Bar No._____1363335U_____

_____
Assistant Criminal District Attorney
State Bar No._____

_____
Defendant

APPROVED:

_____
Date

_____
George Gallagher, Presiding Judge
396th Judicial District Court, Tarrant County, Texas

18

Initiate: 13:31:50 01/10/12     Call/Case Nbr:
 G0366/GP1200000922+

Entry:       13:34:01            Current Status: ONSCENE
OK

Dispatch: 13:35:34              Primary Unit:    453
Onscene:  13:39:25             Jurisdiction:    GP
Close:                         Disposition:

Location: 2105 N HWY 360 SB ,GP (SEVEN ELEVEN AT NE
GREEN OAKS)
Loc Comments:
DAREA:      N1     Current:
Beat/Stn: 21     Map Page: 70        Type: ROB       Final:

RD:         1205T       Page: K       Priority: EP ROBBERY
                        Page:                    HAZARD
PRIORS                  ☐Detail

---

| Time | Type | Text |
|---|---|---|
| 13:34:01 | ENTRY | TEXT:BM PULLED A GUN ON HER,LS YELLOWISH COLORED CAR |
| 13:34:01 | E911 | LOCATION:423CG NEXTEL WIRELESS,XX \PHONE:214/416-6799 \COMP:MAPSCO FW 70H / TX0423C-3 \SRC:WPH2 \LAT:32.7859389 LON:-97.0599389 \CONF: 0% \UNCERT: 3FT \PNUM:817/211-3849 |
| 13:34:01 | PRIOR | GP CHECK 01/05/12 @ 07:05:22 (40 MORE) |
| 13:34:33 | SUPP | TEXT:POSS HEADING SB ON 360,SUSP SAYING THEY WENT TOWARDS ARKANSAS |
| 13:35:06 | UPDATE | COMP:MAPSCO FW 70H / TX0423C-3-->MONICA |
| 13:35:06 | SUPP | TEXT:SUSP 2 BMS STOLE PURSE, \NAME:MONICA |
| 13:35:16 | SUPP | TEXT:FEMALE REFUSED EMS,CALLER HU CALLING BACK |

```
13:35:34   DISP-ENR   453 124
13:35:34   ID         453 (P224)NEW,GREGORY F.
13:35:34   ID         124 (P190)BROWN,LESLIE J.
13:36:07   SUPP       TEXT:COMPL IN A WHI TOYO SCION,
                      CALLER ONLY SAW ONE HANDGUN,
13:36:29   BACK-ER    124 160
13:36:29   ID         160 (P225)ANGUIANO,RAYMOND JR
13:36:33   SUPP       TEXT:SUSP PULLED GUN TO HER HEAD
                      AND ASKED FOR THE MONEY,SUSP GOT
                      INTO HER VEH
13:36:41   BACK-ER    124 126
13:36:41   ID         126 (P101)GARCIA,OSCAR
13:36:50   PREEMPT    126
13:36:50   REPLACE    126 127
13:36:50   ID         127 (P153)LEPAK,DENNIS J.
13:37:03   BACK-ER    127 126
13:37:03   ID         126 (P101)GARCIA,OSCAR
13:37:18   MISC       126, FROM CARRIER/DESCO
13:37:32   INSRVICE   124
13:37:55   MISC       453, ROY ORR/WN CARRIER
13:38:15   SUPP       TEXT:CALLER DIDNT GET ANYTHING
                      FURTHER ON SUSP VEH,NO LP,NO
                      DECALS OR STICKERS,***SUSP VEH
                      LIGHT COLORED YELLOW PT CRUSIER***
13:38:35   MISC       .366 4, CALLING ARLINGTON PD AS
                      WELL
13:38:46   BACK-ER    127 121
13:38:46   ID         121 (P087)SZEMPRUCH,MITCH
13:39:25   ONSCENE    453
13:39:31   SUPP       TEXT:***SPANISH SPEAKING FEMALE***
13:40:29   MISC       .366 4, REQ C140 TO BOLO SUSP INFO
                      TO SOUTH UNITS
13:41:40   ONSCENE    121
13:42:15   MISC       453, HAVING TO USE TRANSLATOR, TO
                      GET DESC
13:43:01   MISC       453, CORRECTION --BEIGE PT CRUISER
```

## CASE SUMMARY:

The complainant in this offense is Monica Marquez. The defendant in this offense is Davon Barrett.

On January 10, 2012 at 1:34 pm, Officer G. New #224 and Officer O. Garcia #101, responded to a robbery that had just occurred at the 7-11 Store, 2105 N. Hwy 360 #A, in which two black males stole a purse at gunpoint. With the aide of a translator, the Spanish-speaking caller described the suspect's vehicle as gray, yellow or beige in color. On arrival, Officer New met with Monica Marquez sitting in her white 2006 Toyota Scion alongside pump #2. Using a translator, Officer New learned that one of the suspects was armed with a silver semi-automatic pistol. After viewing the security video, Acting Sergeant R. Anguiano radioed the suspect's vehicle was a gray PT Cruiser type vehicle with the driver as a black male wearing a tan / light color sweatshirt and the passenger wearing a black hooded jacket.

Officer Garcia arrived at the store and interviewed Ms. Marquez. She advised that she had stopped at the 7-11 to get gasoline and pulled at pump number #2. She went inside to pay for gasoline and food items and walked back to her vehicle to pump the gas. As she was about to get into her car, she felt a blunt object thrust on her left ribcage. She turned and saw a black male holding a silver semi-automatic pistol against her side. Immediately, she darted around behind her car and rushed to the front of the store where she hid behind another customer's car parked nearby. Looking over the customer's car, she saw a gray PT Cruiser-type vehicle exiting the parking lot, heading southbound on S.H. 360. Marquez advised that her black Coach purse was stolen from underneath the driver's seat. The purse contained her Texas driver's license, Well Fargo debit card, Wal-Mart debit card, $800 pesos and $350-$400 in US currency. A description was broadcast of the suspect information.

Approximately 11 minutes later Police Chief Dye and Assistant Chief Trask located a silver Chevrolet HHR with temporary tag 13M4124 at the Shell station located at 3080 Mayfield getting gas. The subjects matched the physical description provided by the complainant. The subject wearing black walked out of their view and the subject wearing the light color clothing started to drive away. Chief Dye stopped the vehicle in the 2800 block of S. Hwy 360 and found that the driver, Davon Barrett, was operating the vehicle with a suspended license and Barrett was subsequently arrested. Barrett had $258.00 in his possession at the time of his arrest. The subject wearing black was not located.

Detectives A. Frizzell and T. Hinson responded to the location and reviewed the surveillance video and determined that the suspect vehicle was actually a silver Chevrolet HHR. The driver of the vehicle is seen getting out and approaching the complainant who turns and runs away. The driver then reaches inside her car and returns to the HHR. The passenger in the HHR gets out of the vehicle and is walking at the back of the car when the driver gets the purse and starts back to the vehicle. Both subjects get into the car and it leaves south on the 360 service road.

Officer Wallis #165 went to the EZ Mart and checked the area where the HHR was getting gas and located the black purse taken in the offense in a trash can near the gas pump where the vehicle was first observed by Chief Dye.

Officers reviewed the video from the Shell and saw the vehicle pull up to the pumps with Barrett driving. The subject in black is seen putting the purse in the trash can and walking away. Barrett puts gas in the vehicle and drives away before being stopped.

Det. Frizzell returned to the station and had the complainant prepare a written statement about the incident in Spanish. Frizzell prepared a six picture photo lineup that contained a picture of Barrett. Frizzell gave the complainant the lineup instruction sheet in Spanish and allowed her to read it. She did so and advised that she did not have any questions. Det. Scesney then showed the complainant the lineup but she was unable to identify Barrett because she only saw him for a matter of seconds and ran.

Frizzell obtained the complainant's purse from the property room and returned it to her. She advised that her Tx DL, a Wal-Mart card, a Wells Fargo Card, between $350 and $400 in U.S. currency, and 700 - 800 Mexican pesos were missing from her purse.

Det. Frizzell then met with Barrett in the jail and read him the Miranda Warning and Barrett agreed to discuss the case. During the interview, which was recorded, Barrett advised that he had started to FT. Worth to look for a job but traffic was too bad on NB 360. He said that he turned around and came back and received a call from a subject he knows as K-Ray or KT. He said that he stopped at the Windsprint Apartments at Arkansas and 360 and spoke with K-Ray / KT who said that he had been out hitting licks and needed a ride. He said that K-Ray / KT had a purse in his pants. He said that K-Ray was wearing a light sweat shirt like the one he had on. Barrett said that he took him to the Shell at 360 and Mayfield where K-Ray used a credit card at the pump to buy him gas and then walked away. He said that he was stopped as he left the location. Frizzell asked him about his vehicle being on video at the time of the offense and that it was only 11 minutes later when he was seen at the EZ Mart. He said that K-Ray drives a vehicle just like the one that he was driving. It became obvious to Frizzell that the defendant was going to stick with that story so he stopped the interview.

On January 11, 2012 Det. Hinson obtained a search warrant for Barrett's HHR. The warrant was executed and CSI Katy Gildner took photographs of the vehicle. She processed the passenger side of the vehicle for finger prints in an effort to identify the other subject that walked away from the vehicle. A search of the vehicle was conducted and several documents were location with different names from the owner and the defendant. None of those documents were related to this case but were seized to see if they belong to other victims. CSI Katy Gildner located partial prints on the passenger door that were collected.

Det. Frizzell and Det. Hinson went to the 7-11 and obtained a copy of the video of the offense.

On January 12, 2012 Det. Frizzell met with Penny Banks at EZ Mart and obtained a copy of the video from that location.

Det. Frizzell prepared this case and filed it with the T.C.D.A. for prosecution while the defendant was in custody.

# Grand Prairie Police Department



1525 Arkansas Lane

Police Department
Nature of Call
RROB

Grand Prairie, TX 75052

(972)237-8790

(972)237-8744

Reported Date
01/10/2012

Officer
BOVINO,RAFAEL

## Administrative Information

| Agency | | Report No | Supplement No | Reported Date | Reported Time |
|---|---|---|---|---|---|
| Grand Prairie Police Department | | 12-922 | 0004 | 01/10/2012 | 22:11 |

| CAD Call No | Status | Nature of Call | | | | |
|---|---|---|---|---|---|---|
| 120100366 | ARREST | ROBBERY | | | | |

| Location | | | | City | ZIP Code | Rep Dist |
|---|---|---|---|---|---|---|
| 2105 N HWY 360 SB | | | | Grand Prairie | 75050 | 1205T |

| Area | Beat | From Date | From Time | Officer | | |
|---|---|---|---|---|---|---|
| N1 | 2100 | 01/10/2012 | 13:31 | C358/BOVINO,RAFAEL | | |

| Assignment | Entered by | Assignment | RMS Transfer | Prop Trans Stat |
|---|---|---|---|---|
| SUPPORT - DETENTION | C358 | SUPPORT - DETENTION | Successful | Successful |

| Approving Officer | Approval Date | Approval Time | |
|---|---|---|---|
| C215 | 01/10/2012 | 22:21:26 | |

## Narrative

Add Additional Charge(s) of: AGG ROBBERY 29.03 F1, A/P BARRETT,DAVON

DO R.BOVINO C358

### Narrative: (REQUIRED)

In the County of: DALLAS

On 01/10/2012 at about 1815 hours, Det. Frizzell dropped off the affidavit to add a new charge to A/P Barrett, Davon. Charge was added. nothing further.

| Report Officer | Printed At | |
|---|---|---|
| C358/BOVINO,RAFAEL | 11/30/2012 15:09 | Page 1 of 1 |

[EX. T]

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

OCT 19 2015

TIME_____
BY_____ DEPUTY

NO. C-396-010599-1266858-A

| | | |
|---|---|---|
| **EX PARTE** | § | **IN THE 396th JUDICIAL** |
| | § | |
| | § | **DISTRICT COURT OF** |
| | § | |
| **DAVON PAUL BARRETT** | § | **TARRANT COUNTY, TX** |

## STATE'S RESPONSE TO APPLICATION FOR WRIT OF HABEAS CORPUS

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW THE STATE OF TEXAS, by and through the Tarrant County Criminal District Attorney, and in opposition of the Application for Writ of Habeas Corpus respectfully states the following to the Court based on her information and belief:

## I. HISTORY OF THE CASE

The applicant, DAVON PAUL BARRETT ("Applicant"), was convicted by a jury of the first degree felony offense of aggravated robbery with a deadly weapon, to-wit: a firearm, on May 1, 2013. *See* Judgment, No. 1266858D. The trial court assessed punishment at sixty years confinement in the Texas Department of Criminal Justice – Institutional Division. *See* Judgment.

The Second Court of Appeals affirmed the trial court's judgment on June 5, 2014. *See Barrett v. State*, No. 02-13-00200-CR, 2014 WL 2538803 (Tex. App. – Fort Worth Jun. 5, 2014, pet. ref'd) (not designated for publication).

COPY

## II. APPLICANT'S ALLEGATIONS

Applicant alleges his confinement is illegal because (1) he received ineffective assistance of counsel during the plea process (Ground One) and (2) he received ineffective assistance of counsel during trial (Grounds Two, Three, and Four). *See* Application, p. 6-12.

## III. NECESSITY FOR AN EVIDENTIARY HEARING & EXPANSION OF THE RECORD

There is no need for an expansion of the record. Applicant's application can be resolved based on the record before this Court. Applicant need **NOT** be brought back to Tarrant County for a hearing.

## IV. ARGUMENT AND AUTHORITIES

### A. Applicable Law

In a habeas corpus proceeding, the burden of proof is on the applicant. *Ex parte Rains*, 555 S.W.2d 478, 481 (Tex. Crim. App. 1977). An applicant "must prove by a preponderance of the evidence that the error contributed to his conviction or punishment." *Ex parte Williams*, 65 S.W.3d 656, 658 (Tex. Crim. App. 2001). In order to prevail, the applicant must present facts that, if true, would entitle him to the relief requested. *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985). Relief may be denied if the applicant states only conclusions, and not specific facts.

*Ex parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000). In addition, an applicant's sworn allegations alone are not sufficient to prove his claims. *Ex parte Empey*, 757 S.W.2d 771, 775 (Tex. Crim. App. 1988).

**B. Applicant's application for writ of habeas corpus should be DISMISSED for non-compliance.**

Rule 73.1 has very specific requirements for a compliant application for writ of habeas corpus. First,

> (c) *Contents*. The applicant or petitioner must provide all information required by the form. The form must include all grounds for relief and set forth in summary fashion the facts supporting each ground. Any ground not raised on the form will not be considered. Legal citations and arguments may be made in a separate memorandum. The form must be computer-generated, typewritten, or legibly handwritten.

Tex. R. App. P. 73.1(c). Here, Applicant has failed to "set forth in summary fashion the facts supporting each ground" on the application. *See* Application, p. 6-12. Therefore, the application is non-compliant.

Applicant's application for writ of habeas corpus should be **DISMISSED FOR NON-COMPLIANCE.**

## V. CONCLUSION

Wherefore, premises considered, the State prays that this Court recommend that Applicant's application for writ of habeas corpus be **DISMISSED FOR NON-COMPLIANCE.**

Respectfully submitted,

SHAREN WILSON
Criminal District Attorney
Tarrant County

Andréa Jacobs, Assistant
Criminal District Attorney
State Bar No. 24037596
401 West Belknap
Fort Worth, TX 76196-0201
Phone:        817/884-1687
Facsimile:   817/884-1672

## CERTIFICATE OF SERVICE

A true copy of the above has been mailed to Applicant, Mr. Davon Paul Barrett, by and through his attorney of record, Hon. Clay S. Conrad, at 11767 Katy Freeway, Ste. 740, Houston, Texas 77079 on the 19th day of October, 2015.

Andréa Jacobs

## CERTIFICATE OF COMPLIANCE

The total number of words in this State's Response is **941** words as determined by the word count feature of Microsoft Office Word 2010.

Andréa Jacobs

## NO. C-396-010599-1266858-A

| | | |
|---|---|---|
| **EX PARTE** | § | **IN THE 396ᵗʰ JUDICIAL** |
| | § | |
| | § | **DISTRICT COURT OF** |
| | § | |
| **DAVON PAUL BARRETT** | § | **TARRANT COUNTY, TX** |

## ORDER

The application for writ of habeas corpus of DAVON PAUL BARRETT ("Applicant") does not "set forth in summary fashion the facts supporting each ground." Therefore, this Court recommends that Applicant's application be **DISMISSED FOR NON-COMPLIANCE** because Applicant's application fails to comply with Texas Rules of Appellate Procedure Rule 73.1.

The Court further orders and directs:

1. The Clerk of this Court to file these findings and transmit them along with the Writ Transcript to the Clerk of the Court of Criminal Appeals as required by law.

2. The Clerk of this Court to furnish a copy of the Court's findings to Applicant, Mr. Davon Paul Barrett, by and through his attorney of record, Hon. Clay S. Conrad, at 11767 Katy Freeway, Ste. 740, Houston, Texas 77079, and to the post-conviction section of the Criminal District Attorney's Office.

SIGNED AND ENTERED this _____ day of _____, 2015.


_____
JUDGE PRESIDING

NO. C-396-010599-1266858-A

| EX PARTE | }{ | IN THE 396TH JUDICIAL |
| | }{ | DISTRICT COURT OF |
| DAVON PAUL BARRETT | }{ | TARRANT COUNTY, TX. |

## DAVON PAUL BARRETT'S REPLY TO THE
## STATE'S MOTION TO DISMISS

TO:   THE HONORABLE JUDGE OF SAID COURT

DAVON PAUL BARRETT, Applicant, by and through his counsel of record, enters this his reply to the State's motion to dismiss the instant habeas corpus application, and in support of such reply counsel would show:

I.

1.     The State has understated Applicant's allegations in an attempt to present as de minimus the nature of this habeas action.  There are no "general" allegations asserting ineffective assistance of counsel. The truth of the allegations is that this Applicant, proceeded to trial when his counsel failed to advise Applicant of a ten year confinement plea bargain, not once but twice, a plea bargain that Applicant would have accepted. The reality of this Applicant is that he had been in trouble with the law on numerous prior occasions, and each and every time he had been subjected to the judicial process in his prior cases he had pleaded guilty each and every time



without exception. The plea bargain was ten years. The sentence after the jury trial and conviction was SIXTY YEARS. The ineffective assistance allegations are anything but de minimus.

2. Additionally, the State has chosen a path calculated to misdirect this Court's attention from the significance of the additional ineffective assistance claims. Trial counsel failed to investigate, and this is not a common or ordinary or run of the mill claim made by a prisoner. Applicant was convicted of aggravated robbery by using a firearm. The crime was videotaped at the location where the crime occurred, and the videotape reveals there was no firearm used or exhibited in the commission of this crime. The sentence for "robbery" is up to twenty (20) years in prison. If Applicant was guilty of any crime he was guilty of "robbery", not "aggravated robbery", and he is currently sentenced to a sentence that is FORTY YEARS GREATER than the sentence he could have been imposed had he been found guilty of robbery. Trial counsel failed completely to raise this evidentiary matter in the trial, and as a result the jury was permitted to find the Applicant guilty of aggravated robbery.

3. Unfortunately, the State is attempting to minimize the sufficiency of the habeas claims in this case. This is not a frivolous pleading, and if it was, the State would have freely demonstrated the frivolous nature of the claims made in response.

## II.

1.     In a habeas corpus proceeding, as the State has argued, the burden of proof is on the Applicant. *Ex Parte Raines*, 555 S.W.2d 478, 481 (Tex. Cr. App. 1977). Applicant has accepted this burden, and Applicant has met that burden. At present the burden is to present a prima facie case for granting habeas corpus relief, that is, to present facts and argument that, if true, would be sufficient to warrant the granting of relief. Applicant has met that burden, and the Court is aware of this from the record before the Court. The form application, memorandum of law in support and exhibits are before the Court, and though properly served with such papers, the State has made no claim that the filing is insufficient to establish a prima facie case for granting habeas relief.

2.     The State has argued that Applicant must show that the error of his counsel contributed to his conviction or punishment. *Ex Parte Williams*, 65 S.W.3d 656, 658 (Tex. Cr. App. 2001). Again, the error asserted by Applicant goes directly to an effect on both the conviction and sentence. Counsel failed to note and argue that the Applicant, if guilty at all, was not guilty of aggravated robbery, but robbery, and his sentence is 50 years beyond what he could have pleaded guilty for, and 40 years beyond the maximum sentence for robbery. Again, Applicant has met the legal burden the State asserts must be met.

3. The State has argued that Applicant must show facts which if true would entitle him to relief. *Ex Parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Cr. App. 1985). This issue has already been addressed. What is interesting is that the State has yet to claim that the Applicant's claims are insufficient, if true, to warrant granting habeas relief.

4. The State argues relief can be denied if Applicant states only conclusions and not specific facts. *Ex Parte McPherson*, 32 S.W.3d 860, 861 (Tex. Crim. App. 2000), but of course, the State fails to claim that Applicant's allegations are only conclusory and not specific. Applicant's allegations are supported with clear and specific detail, reaching valid conclusions vis a vis the law, and this Court can glean this reality from the pleadings in front of the Court.

5. Finally, the State concludes that an applicant's sworn allegations alone are insufficient to prove the claims. *Ex Parte Empey*, 757 S.@.2d 771, 775 (Tex. Cr. App. 1988). Of course, this too is inapplicable to Applicant's claims because those claims are supported by Court documents evidencing the open ten year plea deal, and a videotape of the crime scene evidencing that no firearm was used or exhibited.

The conclusion is empirical. What is before the Court is sufficient to warrant the granting of habeas relief.

III.

1,      The sole grounds for seeking dismissal is premised on the State's claim, again erroneous, that the form that was used did not comply with the rules. The original form did make reference to the memorandum in support of the application. However, this oversight has been corrected, and it was corrected on the very day the State filed the motion to dismiss. On Monday, October 19, 2015 the State moved dismissal for failure to comply with the rules. On Monday, October 19, 2015, Applicant's counsel mailed to this Court a "supplement" to the form originally filed in the case, along with the memorandum in support and the exhibits in support. So, the defect in filing alleged by the State was corrected even before the motion to dismiss was filed.

2.      What is missing in the State's reference to Rule 73.1 is that the sole remedy for noncompliance with the rule results in dismissal. Dismissal does not exist in the rule as the remedy for violation of the rule. Additionally, there is nothing in the rule that prohibits an Applicant from supplying the necessary information in the form, handwritten, typewritten or computer-generated, in a supplement. The point is that before this Court considers the motion to dismiss there will be before the Court a form with all claims and a review of the essential facts in support of such

claims. The cure of deficiency has already occurred, and this Court has before it all that the law requires to consider the grounds not initially raised in the form itself.

3. All the facts, and all the grounds for relief, were incorporated by reference in the memorandum. What the State is arguing, essentially, is that there is no answer to the facts and grounds asserted, but the prisoner who has suffered ineffective assistance of counsel, and is serving 50 more years than he could have pled to, and 40 more years than the actual crime for which he should have been convicted, must languish in prison because a clerk working for his lawyer failed to hand write what had already been computer generated in a legally sufficient memorandum supporting the granting of habeas relief. It strains credulity for this Court to believe that the Constitution should be ignored on such petty argument.

IV.

WHEREFORE, Applicant prays this Court denies the State's motion to dismiss, to the end that the State is ORDERED to answer the application for habeas corpus relief, to the end that this Court determines whether an evidentiary hearing must be conducted, or whether these issues can be decided without a hearing. Applicant prays for any and all such other relief to which he may show himself entitled, including general relief.

7

Respectfully submitted,

**Clay Conrad**

**LOONEY & CONRAD**

**11767 Katy Freeway, Suite 740**

**Houston, Texas 77079**

**281-597-8818**

**COUNSEL FOR APPLICANT**

## CERTIFICATE OF SERVICE

I, Clay Conrad, certify that a true and correct copy of this document was duly served upon Andrea Jacobs, Assistant District Attorney, 401 West Belknap, Fort Worth, Texas 76196-0201, via regular mail, on October 23, 2015.

Clay Conrad, Counsel for Applicant

cs

NO. C-396-010599-1266858-A

| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | 396TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| DAVON PAUL BARRETT | § | OF TARRANT COUNTY, TEXAS |

## MOTION FOR LEAVE TO
## FILE AMENDED PLEADINGS

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Defendant DAVON PAUL BARRETT, Applicant, filing this Motion for Leave to file amended pleadings herein, and hereby shows the following:

I.

The pleading sought to be amended is "Form" for filing petitions for habeas corpus relief pursuant to Art. 11.07 Tex. Code Crim. Proc.," and the supplemental form for such filing was filed by mail from Applicant's counsel's office on October 19, 2015.

II.

Movant requests that the Court grant leave to file amendments to pleadings described as follows:

To include in the form for filing the same information that was incorporated by reference in the memorandum in support of petition for Art. 11.07 habeas relief originally filed in this Court, which is now pending in this Court.

III.

Good cause exists to file this amended pleading which outweighs any prejudice to the ends of justice, in general, or the State of Texas, in particular. The same factual basis and

grounds for relief that are already before the Court in the original filing is now incorporated in the form that accompanies the filing. No information has been added. No grounds have been added. It is all the same basis for seeking habeas corpus relief.

**WHEREFORE, PREMISES CONSIDERED**, Movant requests that the Court grant leave to file the amended pleadings requested hereinabove, and for such other and further relief that may be awarded at law or in equity.

Respectfully submitted,

By: _____
Clay Conrad
Texas Bar No. 00795301
Email: csconrad@looneyconrad.com
918 Austin Street
Hempstead, Texas 77445
Tel. (979) 826-8484
Fax. (979) 826-8488
Attorney for Defendant
DAVON PAUL BARRET

## CERTIFICATE OF SERVICE

I certify that on October 23, 2015, a true and correct copy of Defendant's Motion for Leave to File Amended Pleadings was served by mail on ANDREA JACOBS at 918 Austin , Hempstead, Texas 77445.

_____
Clay Conrad

Case No. _____

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS
First Supplemental (Form)
## APPLICATION FOR A WRIT OF HABEAS CORPUS
## SEEKING RELIEF FROM FINAL FELONY CONVICTION
## UNDER CODE OF CRIMINAL PROCEDURE, ARTICLE 11.07

NAME: _Davon Paul Barrett_

DATE OF BIRTH: _May 7, 1988_

PLACE OF CONFINEMENT: _H.H. Coffield Unit, Tennessee Colony, TX_

TDCJ-CID NUMBER: _01854612_ SID NUMBER: _____

(1)  This application concerns (check all that apply):

☒ a conviction                ☐ parole

☐ a sentence                  ☐ mandatory supervision

☐ time credit                 ☐ out-of-time appeal or petition for
                                discretionary review

(2)  What district court entered the judgment of the conviction you want relief from?
     (Include the court number and county.)

     _396th District Ct., Tarrant County, TX_

(3)  What was the case number in the trial court?

     _1266858 D_

(4)  What was the name of the trial judge?

     _Hon. George Gallagher_

(5) **Were you represented by counsel? If yes, provide the attorney's name:**

Yes, Lisa Mullen, Glynis A. McGinty,
Al Lazarus

(6) **What was the date that the judgment was entered?**

May 1, 2013

(7) **For what offense were you convicted and what was the sentence?**

Aggravated Robbery w/ Deadly Weapon

(8) **If you were sentenced on more than one count of an indictment in the same court at the same time, what counts were you convicted of and what was the sentence in each count?**

N/A

(9) **What was the plea you entered?** (Check one.)

☐ guilty-open plea      ☐ guilty-plea bargain
☒ not guilty      ☐ *nolo contendere*/no contest

**If you entered different pleas to counts in a multi-count indictment, please explain:**

(10) **What kind of trial did you have?**

☐ no jury      ☐ jury for guilt and punishment
                            ☒ jury for guilt, judge for punishment

2

(11)   Did you testify at trial?  If yes, at what phase of the trial did you testify?

_____No._____

(12)   Did you appeal from the judgment of conviction?

☑ yes                          ☐ no

If you did appeal, answer the following questions:

(A)   What court of appeals did you appeal to?   _Second   District_

(B)   What was the case number?   _02-13-00200-CR_

(C)   Were you represented by counsel on appeal? If yes, provide the attorney's name:
      _Lisa   Mullen_____

(D)   What was the decision and the date of the decision?   _Aff'd,  June 5, 2014_

(13)   Did you file a petition for discretionary review in the Court of Criminal Appeals?

☑ yes                          ☐ no

If you did file a petition for discretionary review, answer the following questions:

(A)   What was the case number?   _PD-0869-14_

(B)   What was the decision and the date of the decision?   _Refused, Oct. 1, 2014_

(14)   Have you previously filed an application for a writ of habeas corpus under Article 11.07 of the Texas Code of Criminal Procedure challenging *this conviction*?

☐ yes                          ☑ no

If you answered yes, answer the following questions:

(A)   What was the Court of Criminal Appeals' writ number?   _____

3

**(B)** What was the decision and the date of the decision? _____

**(C)** Please identify the reason that the current claims were not presented and could not have been presented on your previous application.

_____

_____

_____

_____

**(15)** Do you currently have any petition or appeal pending in any other state or federal court?

☐ yes ☒ no

If you answered yes, please provide the name of the court and the case number:

_____

**(16)** If you are presenting a claim for time credit, have you exhausted your administrative remedies by presenting your claim to the time credit resolution system of the Texas Department of Criminal Justice? (This requirement applies to any final felony conviction, including state jail felonies)

☐ yes ☒ no

If you answered yes, answer the following questions:

**(A)** What date did you present the claim? \_\_\_\_\_N /A_____

**(B)** Did you receive a decision and, if yes, what was the date of the decision?

_____

If you answered no, please explain why you have not submitted your claim:

That is Not the issue Here -

4



(17)     Beginning on page 6, state *concisely* every legal ground for your claim that you are being unlawfully restrained, and then briefly summarize the facts supporting each ground. You must present each ground on the form application and a brief summary of the facts. *If your grounds and brief summary of the facts have not been presented on the form application, the Court will not consider your grounds.* If you have more than four grounds, use pages 14 and 15 of the form, which you may copy as many times as needed to give you a separate page for each ground, with each ground numbered in sequence. The recitation of the facts supporting each ground must be no longer than the two pages provided for the ground in the form.

You may include with the form a memorandum of law if you want to present legal authorities, but the Court will *not* consider grounds for relief set out in a memorandum of law that were not raised on the form. The citations and argument must be in a memorandum that complies with Texas Rule of Appellate Procedure 73 and does not exceed 15,000 words if computer-generated or 50 pages if not. If you are challenging the validity of your conviction, please include a summary of the facts pertaining to your offense and trial in your memorandum.

**GROUND ONE:**

Ineffective Assistance: Failure to Investigate & advise of the need to accept a 10yr. plea offer prior to the offer expiring

**FACTS SUPPORTING GROUND ONE:**

Ten year plea offer made twice, first until indictment and a second held open for a day. During the prior to indictment offer no investigation was done so counsel could not advise whether to take the deal because counsel did not know the case. Counsel did nothing and allowed the offer to expire. There was no ability for Applicant to either consider the offer much less accept or reject it. Had Applicant KNOWN OF THE 10yR. offer and the facts that were against him he would have accepted the offer.

**GROUND TWO:**

Ineffective Assistance: Failure to investigate prior to a second 10 yr. offer depriving Applicant an informed decision on the second offer of 10 years open before trial.

**FACTS SUPPORTING GROUND TWO:**

A second 10 yr. offer was made July 30, 2012 and left open until the case would be set for trial that date. No investigation by counsel had yet been done and counsel did not have the ability to discuss with Applicant the facts discovered so Applicant could make an informed decision or whether to accept the 10 yr. offer made July 30, 2012. Had counsel done the investigation, and had counsel advised Applicant of the evidence against him and the existence of the one day only 10 yr. offer Applicant would have accepted the offer.

8

**GROUND THREE:**

Ineffective assistance: Failure to note & argue contradictions between C/w's testimony and States video tape evidence showing no firearm used.

**FACTS SUPPORTING GROUND THREE:**

Applicant was charged with aggravated robbery by use of a firearm. The entire crime was videotaped and there was no firearm. In fact Complainants' first report of the crime included no firearm used. Complainant did not report a firearm initially because there was none used which counsel failed to address in crossexamination or even jury argument. The existence or non-existence of the firearm was an essential element of the "aggravated" robbery charged, and counsel failed to advance the empirical defense at trial.

10

**GROUND FOUR:**

Ineffective assistance for counsel's failure to note and argue the police investigation did not support aggravated robbery, nor interview or subpoena witness supporting the defense

**FACTS SUPPORTING GROUND FOUR:**

This crime was first reported as a robbery. No firearm. That was supported by the video tape, which was viewed by Det. Frizzell and Hinson. Counsel failed to subpoena either witness. The "additional" charge of aggravated robbery came only after Det. Frizzell interviewed Applicant, and he refused to accept responsibility for anything. Applicant was never identified by Complainant as holding a gun to her head. Detective Scesney conducted the photo line-up and knew Applicant was not identified. Counsel failed to subpoena Detective Scesney.

12

COUNTY OF HARRIS           *

STATE OF TEXAS            *

## **AFFIDAVIT OF DAVON PAUL BARRETT**

BEFORE ME, the Undersigned Notary Public, appeared a person identified to me as Davon Paul Barrett, who reported as follows:

"My name is Davon Paul Barrett. I am currently incarcerated at the H.H. Coffield Unit, 2661 FM 2054, Tennessee Colony, TX 75884. I am over 21 years of age and competent to write this affidavit. The facts herein related are true and correct and of my own personal knowledge.

"I was arrested on or about January 13, 2012. On the second setting, a ten year plea bargain offer was made on my case. My lawyer told me about it in court, but never discussed with me of the desirability of the plea offer. In fact, she never discussed it with me at all, just let me know it was there. I was indicted on February 17, 2012, and due to the indictment I was told the offer was no longer available. If my attorney had taken time to discuss this plea offer or the risks of going to trial with me during the two weeks during which this offer was available, I would have accepted that offer. By letting this offer expire before discussing it with me, I believe my lawyer cost me the opportunity to accept it.

"Another ten year offer was made on or about July 30, 2012, but it was not discussed with me at that time. If my attorney had taken time to discuss this plea offer or the risks of going to trial with me on that date, I would have accepted that offer. By letting this offer expire before discussing it with me, I believe my lawyer cost me the opportunity to accept it.

"I went to trial without my lawyer ever sitting down and discussing any plea offers with me except in the most general terms. She was not available to answer my questions. She never spoke to me outside of court, and spent very little time with me discussing the case in court. I do not believe that my trial lawyers represented me properly.

"Because I never had a discussion with my lawyer about the terms or desirability of any pleas offers the State made, I ended up going to and was sentenced to sixty years in prison. I understand that I was found guilty, but I believe that when plea offers were made, I should have been given the information to intelligently consider them.

"Further I sayeth not."

_Davon Barrett_
Davon Paul Barrett

SWORN AND SUBSCRIBED TO BEFORE ME on July 13, 2015.

**Gaye L. Karriker**
Notary Public, State of Texas
My Commission Expires
07/20/2015

**Notary Without Bond**

_Gaye L. Karriker_
Notary Public in and for the State of Texas

**WHEREFORE, APPLICANT PRAYS THAT THE COURT GRANT APPLICANT RELIEF TO WHICH HE MAY BE ENTITLED IN THIS PROCEEDING.**

## VERIFICATION

This application must be verified or it will be dismissed for non-compliance. For verification purposes, an applicant is a person filing the application on his or her own behalf. A petitioner is a person filing the application on behalf of an applicant, for example, an applicant's attorney. An inmate is a person who is in custody.

The inmate applicant must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public. If the inmate is represented by a licensed attorney, the attorney may sign the "Oath Before a Notary Public" as petitioner and then complete "Petitioner's Information." A non-inmate applicant must sign the "Oath Before a Notary Public" before a notary public unless he is represented by a licensed attorney, in which case the attorney may sign the verification as petitioner.

A non-inmate non-attorney petitioner must sign the "Oath Before a Notary Public" before a notary public and must also complete "Petitioner's Information." An inmate petitioner must sign either the "Oath Before a Notary Public" before a notary public or the "Inmate's Declaration" without a notary public and must also complete the appropriate "Petitioner's Information."

### OATH BEFORE A NOTARY PUBLIC

STATE OF TEXAS

COUNTY OF _H ARRIS_

_CLAY S. CONRAD_ , being duly sworn, under oath says: "I am the applicant / petitioner (circle one) in this action and know the contents of the above application for a writ of habeas corpus and, according to my belief, the facts stated in the application are true."

_____
Signature of Applicant / Petitioner (circle one)

SUBSCRIBED AND SWORN TO BEFORE ME THIS _17_ DAY OF _August_, 20_15_.

CRYSTAL LYNN ELDRIDGE
MY COMMISSION EXPIRES
September 19, 2018

_____
Signature of Notary Public

16

Ex. 8

Davon P. Barrett

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tarrant Co. District Clerk
100 N. Houston St.
Fort Worth, TX 76102

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9403 0196 5120 1186 21

2. Article Number (Transfer from service label)

7015 0640 0007 9315 8752

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                                    RECEIVED              ☐ Agent
                                                          ☐ Addressee
B. Received by (Printed Name)        OCT 2 2 2015    C. Date of Delivery
                                                     OCT 2 2 2015
D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No
                                     Tarrant County Mailroom

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PS Form 3811, April 2015 PSN 7530-02-000-9053

---

Davon Barrett

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Tarrant Co. District Clerk
100 E. Weatherford St.
Forth Worth, TX 76196

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖
9590 9403 0418 5163 2702 31

2. Article Number (Transfer from service label)

7015 0640 0007 9315 8851

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X                              RECEIVED                    ☐ Agent
                               OCT 19 2015                 ☐ Addressee
B. Received by (Printed Name)        Tarrant County Mailroom    Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:         ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Mail
☐ Mail Restricted Delivery
500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

PS Form 3811, April 2015 PSN 7530-02-000-9053

FILED
THOMAS A WILDER, DIST. CLERK
TARRANT COUNTY, TEXAS

NOV 10 2015

TIME_____11:15am_____
BY_____ DEPUTY

NO. C-396-010599-1266858-A

EX PARTE §
§
§   IN THE 396ᵗʰ JUDICIAL DISTRICT COURT OF
§
DAVON PAUL BARRETT §
§   TARRANT COUNTY, TX

## ORDER

The application for writ of habeas corpus of DAVON PAUL BARRETT ("Applicant") does not "set forth in summary fashion the facts supporting each ground." Therefore, this Court recommends that Applicant's application be **DISMISSED FOR NON-COMPLIANCE** because Applicant's application fails to comply with Texas Rules of Appellate Procedure Rule 73.1.

The Court further orders and directs:

1.   The Clerk of this Court to file these findings and transmit them along with the Writ Transcript to the Clerk of the Court of Criminal Appeals as required by law.

2.   The Clerk of this Court to furnish a copy of the Court's findings to Applicant, Mr. Davon Paul Barrett, by and through his attorney of record, Hon. Clay S. Conrad, at 11767 Katy Freeway, Ste. 740, Houston, Texas 77079, and to the post-conviction section of the Criminal District Attorney's Office.

SIGNED AND ENTERED this ___10___ day of ___November___, 2015.

_____
JUDGE PRESIDING

## NO. C-396-010599-1266858-A

| | | |
|---|---|---|
| EX PARTE | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| | § | 396TH JUDICIAL DISTRICT |
| | § | |
| | § | |
| DAVON PAUL BARRETT | § | OF TARRANT COUNTY, TEXAS |

## DAVON PAUL BARRETT'S OBJECTIONS TO THE
## ORDER OF DISMISSAL FOR NON-COMPLIANCE

**TO: HONORABLE GEORGE GALLAGHER, PRESIDING**

DAVON PAUL BARRETT, Applicant, by and through his counsel, enters these his objections to the ORDER of dismissal and recommendation of dismissal entered by this Court on November 10, 2015, and in support of such objections Applicant would show as follows:

### I.

The District Court entered its Order of dismissal and recommendation to the Texas Court of Criminal Appeals of dismissal because of its finding that Applicant's application for habeas corpus relief does not set forth in summary fashion the facts support each ground. It is unknown whether the recommendation of dismissal is "with" or "without" prejudice. The entire controversy revolves around the de minimus claim by the State of Texas that Applicant failed to comply with Rule 73.1 Tex. R. App. Proc. that the facts supporting habeas relief were not entered on the "form" provided for filing under Art. 11.07 Tex. Code Crim. Proc., and as such the entire habeas application should be dismissed. The reasoning is entered in error.

### II.

First, all the facts in support of granting habeas relief were before the District Court on

original filing. The "form" was filed concurrently with a memorandum in support, and the "form" referenced the memorandum for such factual basis. All the facts in support of granting habeas relief were included in the memorandum, just as referenced by notation on the "form". To claim the factual basis was not before the District Court on original submission simply is not the case. And in fact, rather than dismissing the initial application for failure to present all the habeas facts on original filing, the District Court ordered the State of Texas to answer. If the initial filing did not comply substantially with the rules then the District Court would have simply refused to file the defective application and ordered the defect to be cured.

### III.

Rather than do that, the Court filed the application and in doing so entered a de facto issuance of the writ. In ordering the State to answer the District Court had to have found the application was sufficient, i.e., the factual basis, if true, was sufficient to warrant the granting of habeas corpus relief. Otherwise, and if the factual basis was insufficient, or if the pleading was deemed frivolous, the District Court would have simply dismissed the application as frivolous. This did not occur. Rather the District Court ordered the State to answer.

### IV.

In its "answer" the State of Texas did not deny a single habeas corpus fact alleged. The State made no claim that the facts, if true, were insufficient to warrant the granting of habeas relief. The State simply filed for dismissal because the facts were not set out on the proper piece of paper in the habeas corpus packet. No authority has been cited by the State of Texas, or the District Court that the remedy for the defect claimed to exist in this case is DISMISSAL. The Texas Court of Criminal Appeals has never concluded that DISMISSAL of a habeas application, which sets out an undisputed prima facie case for granting habeas relief, is subject to dismissal

because the factual basis was included in a memorandum in support (a different piece of paper) rather than on the habeas application "form" itself.

Additionally, neither the State of Texas, nor the District Court, cited to a single case decided by the Texas Court of Criminal Appeals that including the factual basis for granting habeas corpus relief in a memorandum, rather than on the habeas application itself, is a defect in form so significant as to warrant dismissal of the entire application. Likewise, no case from the Texas Court of Criminal Appeals was cited holding that incorporating by reference on the habeas application "form" itself the memorandum filed concurrently as being the document where the facts would be revealed, is so procedurally deficient as to warrant dismissal of the application in its entirety.

## V.

This case involves a habeas corpus Applicant filing an application that sufficiently sets out all the habeas facts to support the granting of habeas relief. The ineffective assistance claims made are substantial, that not one but two lawyers failed to apprise the Applicant of the availability of a plea bargain, on not one but two occasions, in which Applicant could have pleaded guilty for a ten year sentence. Prejudice to Applicant is empirical as the sentence imposed was 60 years in prison, 50 years more than what Applicant could have pleaded guilty to without a trial. Additionally, and not denied by the State, is the reality that trial counsel failed to introduce a video tape of the crime itself, and that evidence revealed no firearm was used or exhibited in the commission of the offense. Applicant was sentenced to 60 years in prison for aggravated robbery, when there was clear evidence that no firearm was used resulting in Applicant being incarcerated for 40 years greater than the maximum sentence allowed by law for the crime that was committed. Prejudice to Applicant is clear and unequivocal.

## VI.

The Order of dismissal is further entered in error because it does not reflect the entirety of the matter before the District Court. Applicant filed his application, and the State answered with a motion to dismiss. However, that motion was filed October 19, 2015, and served on Applicant's counsel. Applicant's counsel, on October 20, 2015, filed with the District Court, a response to the State's motion to dismiss, and that response was received by the District Court on October 22, 2015. (Attached). However, that was not all that was filed in response. Received by the District Court on October 29, 2015 was Applicant's amended/supplemental application for habeas corpus in which Applicant filed in all the blanks on the habeas application "form" itself, curing all the defects the State had entered complaint. The amended/supplemental form was filed twelve (12) days before the District Court entered its order of dismissal claiming the "form" was not properly completed. As such, the "form" and the memorandum were both before the Court when the Order recommending dismissal was entered. All the habeas facts in support of granting habeas relief were before the Court when the Court entered the order finding otherwise. (Attached). It is simply erroneous and not true that the "... Applicant does not 'set forth in summary fashion the facts supporting each ground...'....".

## VII.

In the end the District Court has attempted to deny Applicant the Great Writ of Habeas Corpus, not because the merits of his claims are frivolous, and not because the habeas facts, if true, are insufficient to warrant the granting of habeas relief. The District Court would have this Applicant's application dismissed for no other reason than that the State requests such, on grounds not supported by a single case holding recommending such, and on a record that in no way supports such a conclusion. Recommending dismissal of this application on these grounds

and for these reasons is an abuse of discretion, and the recommendation must be disallowed by the Texas Court of Criminal Appeals.

**WHEREFORE, PREMISES CONSIDERED**, Applicant requests that the District Court vacates and sets aside its order recommending dismissal, to the end that the State of Texas is ordered to answer the Applicant's application in its entirety, to the end that this matter is returned to the Texas Court of Criminal Appeals for final resolution.

Respectfully submitted,

By: _____
Clay Conrad/
Texas Bar No. 00795301
Email: csconrad@looneyconrad.com
918 Austin Street
Hempstead, Texas 77445
Tel. (979) 826-8484
Fax. (979) 826-8488
Attorney for Defendant
DAVON PAUL BARRET

## CERTIFICATE OF SERVICE

I certify that on November 13, 2015, a true and correct copy of Defendant's Motion for Leave to File Amended Pleadings was served by mail on ANDREA JACOBS , Assistant District Attorney, 401 West Belknap, Fort Worth, Texas 76196-0201 via regular mail.

_____
Clay Conrad

# LOONEY&CONRAD P.C.
## *Trial Lawyers*

| | | |
|---|---|---|
| 11767 KATY FREEWAY, SUITE 740 | PAUL C. LOONEY | 918 AUSTIN STREET |
| HOUSTON, TEXAS 77079 | CLAY S. CONRAD | HEMPSTEAD, TEXAS 77445 |
| (281) 597-8818 – OFFICE | RICHARD L. SENASAC | (979) 826-8484 – OFFICE |
| (281) 597-8284 – FACSIMILE | CARBETT "TREY" DUHON III, | (979) 826-8488 – FACSIMILE |
| | OF-COUNSEL | |

Clerk, Court of Criminal Appeals                     November 13, 2015
P.O. Box 12308
Austin, Texas 78711

Tarrant County District Clerk
100 North Houston Street
Fort Worth, Texas 76102

Andrea Jacobs
Assistant District Attorney
401 West Belknap
Fort Worth, Texas 76196-0201

RE:     Ex Parte Davon Paul Barrett, Case No. C-396-101599-1266858-A

GREETINGS:

November 10, 2015 District Judge Gallagher of the 396th District Court entered a recommendation and ORDER that the Petition and Application for Davon Paul Barrett pursuant to Art. 11.07 Tex. Code Crim. Proc. be dismissed. No time was accorded the Applicant for filing written objections to that recommendation. The Clerk of the District Court was ORDERED to transfer that recommendation to the Clerk of the Texas Court of Criminal Appeals as required by law.

ENCLOSED PLEASE FIND Applicant's objections to that recommendation. Please include these objections with the file that was transmitted to the Clerk of the Court of Criminal Appeals for consideration by the full Court on submission.

Thanking you in advance for your consideration, and I remain,

                                        Sincerely,

                                        Clay Conrad
                                        For the Firm

ENCLOSURES
Cc:     file
CC/jl

